(No. 19388.— ▮▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS CHRISTENSEN, Plaintiff in Error.

*Opinion filed October 19, 1929.*

FRANK A. McDONNELL, (ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Thomas Christensen (hereafter referred to as defendant) was convicted in the criminal court of Cook county of the murder of Boldeslau Wawrzynkiewicz. He was sentenced to the penitentiary for thirty-five years and has prosecuted a writ of error from this court to review the judgment.

Between 9:00 and 10:00 o'clock on the night of February 13, 1926, at Belmont and Sheffield avenues, in Chicago, defendant and a man by the name of Eitz got into a taxi-

cab driven by Arthur W. Erickson. They drove to Sheffield and Lill avenues, where all three entered a building and each had a glass of whiskey. The driver returned to his cab and the other two went to a building across the street and were gone about ten minutes. Defendant then ordered Erickson to drive on Lincoln to Addison, from Addison to Elston, and from Elston to Kedzie avenue. They stopped at an apartment and defendant and his friend went into the hallway and were gone a few minutes. Upon their return they drove a short distance and Eitz left the cab. Defendant then told the driver to go north on Milwaukee avenue. They stopped at the intersection of Lawrence avenue and went into Democratic club headquarters, had three bottles of beer, and defendant took part in a game of cards. They were in this place about half an hour. They then drove north on Milwaukee avenue to the Lone Tree Inn, where defendant drank something from a little glass and talked to a man about three-quarters of an hour. Then they drove to the Radio Inn, which is in the town of Maine, a short distance north of Niles, in Cook county. The inn was owned by the deceased. Walter Blasek was his bar-tender and Barney Richter was in the place when defendant and his chauffeur entered, about 11:30 P. M. Defendant went up to the bar, pulled a star out of his pocket, and said either that he was from the sheriff's office or that he was a police officer. The deceased and Blasek were behind the bar. Defendant demanded a drink. The deceased told him they had nothing to drink—that it was a private place. Defendant called the deceased several vile names, drew his gun and said: "Come on. Give us a drink or I'll kill you. I'll kill you—kill everybody in the place; shoot the place up." Richter left the place and called the highway police, who are under the jurisdiction of the sheriff of Cook county. The deceased went into the kitchen and Blasek served defendant and his chauffeur with glasses of beer. The deceased returned from the kitchen, went behind the

bar and said to the defendant, "Regards," whereupon defendant fired twice. One bullet struck the deceased near the center of the right cheek, pierced the angle of the lower jaw and entered the spinal column on the right side, between the first and second vertebræ. He died instantly.

In response to Richter's call to the highway police, two officers, Joseph Berger and Gustave Peterson, were sent to the scene of the murder. They arrived on their motorcycles in time to hear the first shot and entered the room just as the second shot was fired. They both rushed at defendant and knocked him in the head with the butts of their revolvers. After the officers had struck defendant over the head Blasek said to him: "My God! You have killed one man. What do you want to do—kill me too?" The officers had not seen the body of the deceased behind the bar, and said, "Killed? Who is killed?" The bartender said, "Look behind the bar." After examining the body Berger asked defendant whether he shot this man, and he said, "Yes; I killed him." Berger said, "Who are you?" Defendant replied, "I am a police officer; give me a break." Berger said, "You are? Where are your credentials?" Defendant showed his star, which Berger took from him. When the officers were taking the body from behind the bar defendant got up and said, "Let me kick the Polack son of a b—. Let me kick him." And again he said, "Let me kick him. Let me kick him. I'll shoot him again."

The shooting is admitted. The defense is insanity and drunkenness, together with previous good reputation. It is insisted that the judgment should be reversed because of the rejection of competent evidence, on account of the refusal of one instruction, and because the evidence shows that defendant was wholly incapable of forming any intent to kill.

Dr. Roberts arrived at the scene of the homicide a few minutes after the shooting and examined defendant. He

was called as a witness for defendant, and testified that in 1920 he graduated from the University of Bonn, in Germany; that he had practiced medicine in Germany about three years after his graduation and that he had practiced in Illinois about three years; that he had studied mental diseases for one year and had written a thesis on that subject. He testified that he smelled defendant's breath and there was an odor of low alcohol and of ether. The reflexes of his eyes and knees were absent, his features were blunt and rotund, his eyes were a little bit bulged and bloodshot, saliva was running out of his mouth, and he muttered and was inarticulate in his speech. He testified that while he was examining defendant he suddenly rose to his feet and said, "Has somebody been shot here?" He testified that in his opinion defendant was insane when he saw him. He was asked if he had an opinion how long the insanity had existed, and he answered that he had. He was asked how long it had continued. An objection was sustained to the question, and this ruling is assigned as error.

The record shows that when this witness was put upon the stand counsel for defendant said, "I want the record to to show at this time that I have not qualified the doctor as an expert but only as an examining surgeon." If counsel did not qualify him as an expert he was not qualified to answer the question as to the duration of the insanity. He was not acquainted with defendant prior to this night and knew nothing of his prior history. None of the questions which were necessary to qualify him as an expert in respect to the condition of the defendant prior to the shooting were asked. No hypothetical question was put to him showing defendant's life history, or his acts during the evening prior to the shooting, or that just after the shooting the officers struck him in the head with their revolvers. It is apparent that these blows may have affected his mental condition. If a hypothetical question had been put to the witness detailing the facts in evidence and he had been asked

his opinion based upon these facts there might be some merit in defendant's contention, but as the record stands the objection was properly sustained.

Complaint is made of the refusal of the first instruction offered by defendant. This instruction told the jury that the insanity of defendant did not have to be established by positive and direct proof but that it was sufficient if it was established by "circumstantial evidence which reasonably satisfied the mind of its existence." This instruction did not correctly state the law. The legal presumption is that all men are sane, and it is unnecessary for the People in the first instance to prove the sanity of the accused. (*People* v. *Casey*, 231 Ill. 261.) This presumption may be overcome by evidence tending to prove insanity. If the evidence offered is sufficient to raise a reasonable doubt in the minds of the jury as to the sanity of the accused he should be acquitted. (*People* v. *Haensel*, 293 Ill. 33; *People* v. *Ahrling*, 279 id. 70.) It is not necessary that insanity be proved by "circumstantial evidence which reasonably satisfied the mind of its existence," as was stated in the instruction. Even if this instruction did announce a correct rule of law its refusal would not constitute reversible error. Twenty-two instructions were given on behalf of defendant. The jury was fully instructed, including the correct rules in insanity cases, as above stated.

It is insisted that the evidence shows that defendant was in such a state of mind from his intoxication and insanity that he was not legally responsible for his acts. The evidence shows that he rode from place to place from between 9:00 and 10:00 o'clock in the evening until about 11:30. During this time he had three bottles of beer and a couple glasses of whiskey. He gave directions where to drive, including the streets upon which they drove, where to turn at intersections, where to stop, and finally directed his chauffeur to the Radio Inn. He played cards at one place. At another place he had a long conversation with the owner.

When he entered the inn he demanded a drink and threatened to kill the proprietor because he was refused. He told the proprietor he was a police officer, became abusive and used vile language. After the shooting he told the police officers that he was a police officer and asked them to give him a break. He asked favor of them. He knew that he had killed the deceased and admitted that fact to the officers. When the body was brought frcm behind the counter, by the use of vile language he indicated that he knew he had killed the deceased. He gave no indications of insanity or such drunkenness as would render him incapable of forming an intent. Whether a defendant who makes the defense of insanity or drunkenness was so insane or drunk that he could not form an intent is a question of fact for the jury. (*People* v. *Cochran,* 313 Ill. 508; *People* v. *Bacon,* 293 id. 210; *Upstone* v. *People,* 109 id. 169.) The evidence offered on behalf of the People was not contradicted. Defendant did not testify. The evidence in his behalf consisted of the testimony of Dr. Roberts and of five witnesses who testified to his previous good general reputation. The evidence shows that he shot the deceased because he was angry at his refusal to give him a drink. The jury found that defendant was responsible for his acts, and that finding is sustained by the evidence.

We find no reversible error, and the judgment will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*