(No. 24187.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CORYDON A. BLACK, Plaintiff in Error.

*Opinion filed October 22, 1937.*

WILSON, J., dissenting.
ORR, J., specially concurring.

EMMET F. BYRNE, (CLYDE C. FISHER, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, BLAIR L. VARNES, RICHARD B. AUSTIN, and ALEXANDER J. NAPOLI, of counsel,) for the People.

Mr. JUSTICE HERRICK prepared the opinion of the court:

On a trial before a jury in the criminal court of Cook county, the defendant, Corydon A. Black, was found guilty of the murder, by poisoning, of his divorced wife, Cordelia Brosseau. His punishment was fixed at death. He brings the record here for review by writ of error. *Supersedeas* has been granted.

We shall not recite the evidence in much detail nor discuss the merits of the cause. The deceased died on October 5, 1936. The defendant was arrested in his former wife's apartment where he had been staying for several weeks prior to her death. He made two written statements to the police relative to the death of the deceased and the circumstances leading up to it. One was made October 8, the other, October 10, 1936. Each was offered in evidence on the trial. These statements tended to show that her death was the result of a suicide pact between deceased and defendant; that he placed the poison equally into two glasses. Each drank the deadly potion. He claimed to have survived because of the large amount of alcoholic liquor he had previously taken and also because he vomited shortly after taking the deadly draught.

It was the theory of the People that the defendant (1) was jealous of his former wife, (2) feared she would marry a man living in another city with whom she had kept company and was then corresponding, (3) tricked her into taking the poison with the understanding that he would do like-

wise and (4) failed to keep his promise and took none of the fatal drug himself.

The defendant did not testify. The defense was insanity. The two major errors assigned for reversal and stressed in the argument are (1) the medical expert for the People was permitted to take into consideration hearsay evidence upon which he based his opinion that the defendant was sane, and (2) the erroneous admission of evidence showing the commission by the defendant of other criminal offenses and an accusation of a crime, all unrelated to the present charge.

Dr. Harry R. Hoffman, for twenty-four years the physician in charge of the nervous and mental diseases at the house of correction, testified for the People. He stated the social workers in his department had made a social investigation of defendant; that a psychological examination had been made of him by the psychologist, and psychiatric and medical examinations by the physician attached to the clinic. The witness testified that he observed the defendant for about three hours on the occasion when he made his statement to the State's attorney on October 10 relative to the manner in which he claimed the deceased met her death. He next saw and talked to defendant on October 14 in the Cook county jail. No hypothetical question was propounded to this witness. He was permitted, over defendant's objection, to express his opinion that the defendant was sane on October 5. This opinion was formed, in part, upon the report of the social investigation made of the defendant, the psychiatric and medical examinations and psychological tests, all made by others than the witness.

The witness was testifying as a medical expert. It is obvious, in fact admitted, that he based his opinion, in part at least, on matters reported to him by others privately. Neither the court nor the jury were told what these reports were. The doctor necessarily weighed these statements. They were among the component factors from which his

opinion was created and expressed upon a contested issue in the case. In exercising the function of weighing the evidence, a part of the foundation on which his opinion rested, he invaded the province of the jury. This was not proper. (*Maton Bros.* v. *Central Illinois Public Service Co.* 356 Ill. 584, 596; *People* v. *Geary*, 298 id. 236, 246; *Louisville, New Albany and Chicago Railway Co.* v. *Shires*, 108 id. 617, 630; Wharton's Crim. Evidence, sec. 442, p. 699.) The correct practice was to have asked the witness a question stating the facts which he assumed and upon which his opinion as an expert was determined. (*People* v. *Christensen*, 336 Ill. 251, 254; *Louisville, New Albany and Chicago Railway Co.* v. *Shires, supra.*) The trial court committed prejudicial error in refusing to sustain defendant's objection.

Dr. Clarence Neymann, a psychiatrist, testified for the defendant in response to a hypothetical question propounded to him to which no objection was interposed. The witness answered by stating that in his opinion the defendant was insane on October 5, 1936. The type of insanity from which he suffered was manic-depressive with alcoholism. In detailing the physical, neurological and mental examinations made by him of the defendant on January 11, 1937, at the county jail, the witness made this statement, "In testing his memory for past events, I obtained his entire life history, which I will relate a little later." The doctor, thereafter, did relate what purported to be the life story of defendant as given him and which entered into the formation of his opinion that the defendant was suffering from manic-depressive insanity with alcoholism. Upon his cross-examination, the witness was asked if he had related all the history of the defendant that he had learned. The defendant objected. The jury was excused and an examination of the witness conducted before the trial judge, out of the presence of the jury. The witness stated, in substance, the defendant had told him that, when a boy, he

had fired several buildings; when accused of those offenses by the marshal he had confessed that he was the incendiary; that when he lived at Fort Worth, Texas, "he had run his money up to $250,000 on the stock exchange;" he did not then sell his stocks, the market crash caught him and he was accused of taking his employer's money. The witness further stated that he did not take into consideration either of those circumstances in forming the opinion expressed. The court overruled the defendant's objection. The jury was recalled and the witness related in their presence the acts of incendiarism and the accusation of embezzlement lodged against the defendant as stated above. The People urge that the testimony thus elicited on the witness' cross-examination was proper as showing the interest of the witness and affecting his credibility. They cite *People* v. *McGovern,* 307 Ill. 373, 376, 377. The decision in that case does not sustain the People's position. Neither is the case of *Hopps* v. *People,* 31 Ill. 385, authority for the admission of the evidence.

A recurrence to some of the fundamental principles governing the trial of criminal cases is often desirable as well as enlightening. (A defendant, guilty or innocent, is entitled to a fair, orderly and impartial trial in accordance with the law of the land. No distinction is to be made in the character of the proceeding afforded any defendant. There is not one form of trial for a guilty, and a different type for an innocent defendant. (*People* v. *Wolf,* 358 Ill. 334; *People* v. *McLaughlin,* 337 id. 259; *People* v. *Meisner,* 311 id. 40, 47.) The defendant is never required to defend himself against some unrelated offense, accusation or prejudicial insinuation not pertinent to the crime for which he is on trial.) *People* v. *Brewer,* 355 Ill. 348, 353; *People* v. *Decker,* 310 id. 234, 243; *People* v. *Bermingham,* 301 id. 513, 519; *People* v. *Newman,* 261 id. 11.

At the conclusion of the final argument to the jury the assistant State's attorney said, "You are not to turn him

out on the street to again burn and steal and murder; you are going to give him what he deserves and what he expected to get." While no objection was made to this statement, yet it is manifest that the assistant State's attorney used the evidence of prior unconnected criminal transactions on the part of the defendant, and an accusation of yet another crime laid upon him, for what influence such evidence might have on the jury to induce it to return the maximum penalty against the defendant. [ The position of State's attorney imposes on that official the obligation to see that every defendant has a just trial. It is the established law of this State that the State's attorney shall treat the defendant fairly in his argument as well as produce only competent evidence during the trial. ] (*People* v. *Black,* 317 Ill. 603, 619.) The tendency of the evidence showing the commission of the crime of arson by the defendant on different occasions, and, also, that he had been accused of embezzlement, was quite likely to create the belief in the minds of the jury that the defendant was a common or habitual criminal. Such offenses, and the accusation, were in no manner connected with the crime of murder for which defendant was on trial, but the proof of these facts naturally prejudiced the jury against him.

Proof of a distinct offense unrelated to the crime for which the defendant is placed on trial is irrelevant and not admissible. (*People* v. *Deal,* 357 Ill. 634, 641; *People* v. *Brewer, supra; People* v. *Cassler,* 332 Ill. 207, 219; *People* v. *Andrae,* 295 id. 445; *People* v. *Steinkraus,* 291 id. 283.) The test of the admissibility of evidence of another offense is whether it fairly tends to prove the particular felony or misdemeanor charged. *People* v. *Swift,* 319 Ill. 359; *People* v. *Jennings,* 252 id. 534.

The General Assembly has not seen fit to divide the crime of murder into degrees in accordance with the circumstances surrounding the homicide. It has, however, recognized the fact that there may be a difference in the

amount of malicious wickedness motivating the crime, by fixing the punishment to be inflicted on the murderer within a wide range extending from a minimum of fourteen years to imprisonment for life in the penitentiary, or the imposition of the death penalty. Not only is the determination of the issue of guilt or innocence committed to the jury, but they decide, in the event the defendant is found guilty, what punishment he shall suffer. It, therefore, becomes highly important to a defendant that no incompetent evidence be given that ordinarily would arouse the emotions of the jury against him in deciding not only the question of his guilt but also the penalty to be fixed upon him. Evidence of prior offenses, and the accusation of the commission, by the defendant here, of another crime, disconnected from the one for which he was on trial, was well calculated to prejudice the jury against him and to obliterate any feeling of leniency that the jury might have had for him. It is not for this court to speculate to what extent the jury were aroused against the defendant nor what the jury would have done but for this prejudicial testimony. He had the right to have the question of his guilt decided upon a record not handicapped by incompetent evidence. If found guilty, he was entitled to have his punishment determined upon evidence limited to the facts and circumstances of that crime. This court has frequently held that, in a capital case, the verdict will not be permitted to stand where the trial court has improperly permitted to go to the jury evidence of the commission of other crimes by the defendant having no bearing on the one for which he was on trial. (*People* v. *Garines*, 314 Ill. 413; *People* v. *Heffernan*, 312 id. 66; *People* v. *Meisner, supra; People* v. *Lane*, 300 Ill. 422, 424; *People* v. *Ahrling*, 279 id. 70; *Farris* v. *People*, 129 id. 521.) The rule embraces proof of an accusation of another crime. (*People* v. *Brewer, supra.*) None of the legal principles here announce any new rule of law. They are but repetitions of rules of evi-

dence and practice recognized and enforced by this court over a long period of years. *People* v. *Cassler, supra.*

It is urged by the People that there was ample evidence proving defendant's sanity and that he murdered the deceased. The constitution guarantees the defendant a trial by jury, not by a court of review. The penalty of death is not the only penalty for murder in this State. If guilty, the defendant is entitled to have his punishment decided by the jury, in accordance with the statute, and not by the reviewing court.

Other errors are assigned and argued. In view of the conclusion we have reached, it will not be necessary to consider them.

For the errors in the admission of evidence, the judgment of the criminal court of Cook county is reversed and the cause is remanded. *Reversed and remanded.*

Mr. JUSTICE WILSON, dissenting.

Mr. JUSTICE ORR, specially concurring:

I concur in the result attained in this case but believe the reversal should have been based solely on the second ground stated in the opinion. I differ with the conclusion that the expert invaded the province of the jury. The opinion of an expert in insanity cases is peculiar and different from other expert testimony. The only case cited in the opinion which involves insanity and supports the statement in the opinion is *People* v. *Geary,* 298 Ill. 236, but there it appears that the experts gave no hint as to what their opinion was based upon. Here the expert testified that his opinion was based upon his own personal examination of defendant and upon reports of his subordinates. We have repeatedly admitted hospital records and if any doubt existed as to the verity or contents of the reports referred to here, it could have been cleared up by cross-examination of the expert witness.