ROBERT J. PRINCE, Plaintiff-Appellant, *v.* KAREN A. HUTCHINSON, Defendant-Appellee.

Second District   No. 75-443

Opinion filed May 31, 1977.

Robert Goldman and Robert Colan, both of Colan & Goldman, of Chicago, for appellant.

Joslyn & Green, of Woodstock, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Robert J. Prince filed suit against defendant, Hutchinson, seeking $100,000 in damages as compensation for injuries allegedly arising out of an automobile accident which occurred on October 25, 1971. Hutchinson initially denied liability, but subsequently filed an amended answer which admitted liability. On the same day that the amended answer was filed, Prince amended his addendum so as to pray for $250,000 in damages. The case went to trial on the issue of damages alone, and the jury returned a verdict for plaintiff Prince in the amount of $2,500. On appeal, Prince asserts that the verdict and judgment were not adequate compensation for the damages which he sustained, and that the inadequacy of this award was the direct result of the trial court's allegedly erroneous refusal to admit certain portions of an evidence deposition.

Prince's apparent theory at trial was that he suffered medical difficulties as a result of a spinal condition which was caused or aggravated by the impact he experienced in the collision on October 25, 1971. However, the testimony tended to cast considerable doubt upon this theory. Prince admitted that he had injured his back by falling, as early as 1957, although he was not hospitalized on that occasion. He had sprained his back while working, in 1960, and was hospitalized, put in traction in the "Williams" position, and given therapy. The hospitalization lasted three weeks, and the condition persisted into 1961. Prince suffered injuries to his ribs and shoulder in a fall which occurred in 1963, and was again hospitalized. Then, on January 2, 1971, 10 months prior to the accident, Prince was admitted to the Woodstock Memorial Hospital for treatment for a sprained back. At that time, he complained of severe lower back pain; he was hospitalized for two weeks. Thus, it was evident that Prince had experienced considerable difficulty with his back, prior to the accident.

Prince testified that he had not had such difficulty between 1961 and his

hospitalization in January of 1971, nor between his release in January of 1971 and the day of the accident. In his testimony he outlined the pain he experienced and the treatment he had received since October 25, 1971. He had been released from the hospital on October 25, after receiving treatment for cuts and abrasions. He noticed a stiffness in his shoulders and neck and experienced headaches in November of 1971. He was hospitalized on March 21, 1972, and received hydrotherapy, diathermy treatments and was placed in traction in the "Williams" position. He was released on April 14, 1972. He received outpatient therapy after his release, but was hospitalized again on July 21, 1972, at which time he was again placed in bed traction in the "Williams" position. During a further period of hospitalization in August of 1972, he was subjected to a myelogram. He suffered a spasmodic reaction to this test and a numbness of certain portions of his body resulted, which lasted for more than a year. Because of his condition, Prince was unable to work during the 1972-73 school year and, at the time of the trial, was resigning his position as a teacher. However, although Prince's testimony on these points was substantially uncontradicted, as a lay witness he was unable to express an opinion as to whether or not his condition was pre-existing, or the result of injury or aggravation received in the accident. Further, Prince admitted that he may have complained of headaches, one of the symptoms accompanying his state of bad health after the accident, at the time of his hospitalization in January of 1971, and that the treatment administered after the accident was similar in many respects to the therapy he received as early as 1960.

Prince relied exclusively upon the evidence deposition of Dr. Allan B. Hirschtick, which he offered into evidence at trial, in order to establish the medical causation of his difficulties following the accident. Dr. Hirschtick was concededly an examining physician, who had seen Prince on three occasions. Although Dr. Hirschtick had been retained by Prince's trial counsel, with an evident view toward giving testimony in the case, the doctor refused to testify at trial and was never subpoenaed. The problem had evidently been anticipated, however, as the evidence deposition of Dr. Hirschtick, who did not reside or practice in McHenry County, had been taken on January 15, 1975.

The trial court excluded a number of portions of the deposition from admission into evidence and presentation to the jury. Dr. Hirschtick's analysis of certain X rays was excluded, on the grounds that Prince had failed to introduce the X rays which Dr. Hirschtick was interpreting into evidence at trial. More critically, the trial court refused to admit a long hypothetical question and answer which had been put to Dr. Hirschtick by Prince's counsel, on the grounds that the question included factual elements regarding which no evidence had been introduced at trial, and

omitted facts that were in evidence. The hypothetical had attempted to summarize Prince's medical history, treatment and current condition, and requested that Dr. Hirschtick express an opinion as to his diagnosis, and as to whether the accident had caused a traumatic aggravation of Prince's pre-existing spinal disc pathology. Dr. Hirschtick replied that in his opinion Prince suffered from a herniated intervertebral disc in the lumbar spine and a traumatic aggravation of his pre-existing disc pathology, which had occurred as a result of the accident, and that it was a permanent condition. Under cross-examination, Dr. Hirschtick explained the basis for his response to the hypothetical question, and answered a long hypothetical question put to him by defendant's counsel, which asked him to assume all of the facts included in the earlier hypothetical, plus certain additional facts regarding Prince's prior back problems and medical history. Dr. Hirschtick expressed an opinion that whatever problems Prince had experienced prior to October 25, 1971, had "pretty well cleared up" by the time of the accident, and did not change his opinion that the accident caused Prince's subsequent difficulties. However, on motion of defendant's counsel, the trial court excluded that portion of the deposition representing defendant's cross-examination of Dr. Hirschtick, on the somewhat novel ground that the defendant would have had the option of not cross-examining Dr. Hirschtick had the doctor taken the stand at trial, and therefore should also have the option of preventing the cross-examination in the evidence deposition from reaching the jury.

That portion of the evidence deposition which did reach the jury included Dr. Hirschtick's discussion of his examinations of Prince and his findings, his description and interpretation of certain other X rays which were available to opposing counsel, and Dr. Hirschtick's opinion that Prince had sustained a trauma to his cervical spine which had aggravated the pre-existing pathology between his sixth and seventh cervical vertebra.

Counsel for defendant Hutchinson called two medical experts to testify at trial. Dr. Daniel E. Horan, a radiology specialist, qualified certain X rays and interpreted them for the jury. His opinion was that the abnormality shown in the X rays was a pre-existing condition and that there was no evidence of trauma. The other medical witness called by the defendant was Dr. Vincent Petraila, Prince's family physician. He described the treatment Prince had received for back troubles prior to the accident, and expressed an opinion that Prince's hospitalization in April of 1974, was unrelated to the accident. Although not conclusive on the issue facing the jury, the living testimony of these medical witnesses undoubtedly contrasted markedly with the reading of Dr. Hirschtick's evidence deposition.

■■ Plaintiff has argued that it was error to exclude that portion of the evidence deposition containing Dr. Hirschtick's interpretation of certain X rays. We note that every point made by Dr. Hirschtick regarding his interpretation of the X rays in question reached the jury through his interpretation of other X rays in a subsequent portion of the evidence deposition, or through the testimony of Dr. Horan in interpreting X rays at trial. Since each of these points—the absence of signs of bony pathology, the narrowing and reactive change between the sixth and seventh cervical vertebra, the presence of bony lipping, and the degenerative change in discs between the sixth and seventh vertebra— went to the jury in spite of the exclusion, we need not consider any contention of error regarding the exclusion of this evidence; the rejection of evidence is not prejudicial where, as here, the same evidence reaches the jury at a subsequent stage of the trial. *People v. Limas* (1977), 45 Ill. App. 3d 643, 648.

■■ As to the trial court's exclusion of the hypothetical question put to Dr. Hirschtick by counsel for Prince, Prince contends that the issue of whether the facts stated in the hypothetical question are sufficiently established by the proof is purely a jury question, and that the trial court erred in substituting its judgment for that of the jury. This, however, is not the law. A hypothetical question asked of an expert witness may not include facts which are not in evidence before the trier of fact. (*People v. Yonder* (1969), 44 Ill. 2d 376, 385, *cert. denied* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094; *People v. Muniz* (1964), 31 Ill. 2d 130, 137.) Here, at the time that Prince offered the deposition into evidence, there was no proof that he suffered from blurred vision, as to his age, or as to certain other facts, and yet all of these facts had been assumed in the hypothetical. Dr. Petraila's subsequent testimony that Prince "seemed to have trouble focusing his eyes," does not bear upon the issue, since it occurred after the court had already ruled upon the admissibility of the hypothetical, and Prince never re-offered the excluded portion of the deposition. (See *International Text Book Co. v. Mackhorn* (1910), 158 Ill. App. 543, 546-47.) Further, a hypothetical question may not ignore undisputed facts (*Pritchett v. Steinker Trucking Co.* (1969), 108 Ill. App. 2d 371, 376-77), and yet Prince's counsel's hypothetical omitted any reference to the undisputed fact that Prince had suffered a back injury in 1957, and had been hospitalized with back trouble in 1960. It was the duty of the trial judge to pass upon these issues before allowing the hypothetical question and response to go to the jury, and we believe that the trial court properly performed that duty.

The court's exclusion of that portion of the deposition representing defendant's cross-examination of Dr. Hirschtick presents a more difficult

problem. The trial judge's rationale for excluding the cross-examination seems to have been in error. An evidence deposition is not the "property" of the party who takes it, and any portion of an evidence deposition may be offered by either side. (See *Dobkowski v. Lowe's, Inc.* (1974), 20 Ill. App. 3d 275, 278-79.) However, in the instant case, most of the excluded cross-examination portion of the evidence deposition consisted of a hypothetical question put to Dr. Hirschtick by Hutchinson's counsel, which assumed all of the facts given in Prince's hypothetical, and was thus excludable on the ground that it incorporated facts not of record when the deposition was offered at trial. Further, Hutchinson's hypothetical was incomplete and meaningless, absent Prince's hypothetical, and would have served only to confuse, rather than enlighten, the jury. Under these circumstances, there was no error in the court's exclusion of the hypothetical which counsel for Hutchinson put to Dr. Hirschtick at the evidence deposition.

A further portion of the cross-examination consisted of Dr. Hirschtick expounding upon his view that most of Prince's present difficulties were the result of superimposed traumatic neurosis. Dr. Hirschtick was not a psychiatrist and had no formal psychiatric training, and the diagnosis of traumatic neurosis was based upon Prince's subjective complaints to Hirschtick, a physician employed to examine him with a view toward the pending litigation. This section of the evidence deposition thus lacked probative value, and we can state with reasonable certainty that any error in refusing to admit it was harmless.

■■ The balance of the cross-examination consisted of either questions having reference to either Dr. Hirschtick's response to plaintiff's excluded hypothetical, or of a reiteration of the objective basis for his findings. In the first instance, any question having reference to the excluded hypothetical would clearly have served merely to have confused the jury. In the second, no purpose would have been served by reading a second recitation of the objective basis of Dr. Hirschtick's findings to the jury. Thus, the trial court's exclusion of defendant's cross-examination of Dr. Hirschtick did not result in any error requiring the reversal of the judgment herein.

Prince has asserted generally that the excluded portions of the evidence deposition should have been admitted, since defendant waived any objection by failing to raise the objection at the time of the taking of the deposition. However, Supreme Court Rule 211(c)(1) provides that:

> "Grounds of objection to the competency of the deponent or admissibility of testimony *which might have been corrected if presented during the taking of the deposition* are waived by failure to make them at that time; *otherwise objections to the competency*

*of the deponent or admissibility of testimony may be made when the testimony is offered in evidence.*" (Emphasis added.) Ill. Rev. Stat. 1975, ch. 110A, par. 211(c)(1).

■■ Here, the objection to the hypothetical question was based upon the evidence that had been admitted up to the time that the deposition was offered at trial. Counsel for defendant could not possibly have known, at the time of the deposition, whether evidence requisite to the admission of the hypothetical question and response would be in the record when the deposition was offered at trial, nor could counsel for Prince have corrected any gaps in the proofs admitted at trial at the time of the deposition. Under these circumstances, the objection could not have been *made*, much less waived at the deposition.

On this record, we cannot therefore hold that there was any error or combination of errors committed by the trial court, which would warrant a reversal of the judgment. The judgment of the circuit court of McHenry County is therefore affirmed.

Judgment affirmed.

SEIDENFELD and BOYLE, JJ., concur.