*In re* JOHN SMILLEY.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOHN SMILLEY, Respondent-Appellant.)

First District (4th Division)    No. 76-463

Opinion filed October 27, 1977.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and Randolph T. Kemmer, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

John Smilley, respondent, appeals from a judgment of the circuit court remanding him to the custody of the Department of Mental Health for hospitalization pursuant to a finding that he was in need of mental treatment. (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11.) Respondent contends he was denied his constitutional right to confront the witnesses against him by the improper admission into evidence of hearsay testimony of a psychiatrist who did not testify at the hearing.

Considering the totality of the evidence presented to the trial judge, we find the improper admission of hearsay evidence harmless error and we affirm the judgment of the trial court.

A petition for hospitalization was filed on December 22, 1975, alleging that respondent was homicidal and suicidal, and in need of mental treatment. The petition was supported by certificates of two psychiatrists which recited, *inter alia,* that respondent was depressed and confused. He stated he was hearing voices telling him to injure and kill others. Also, respondent asserted that instead of killing his wife as commanded by the voices, he would kill himself.

Respondent's wife testified at the hearing held on the petition. She related that in September 1975, respondent had locked himself in his home and turned on the gas stove; that in mid-October, he went about discharging a shotgun because voices told him to do so; and that in the latter part of October, because of such prior incidents, respondent voluntarily committed himself to a veterans' hospital for mental treatment. Upon respondent's release from that hospital on November 4, 1975, he was arrested for carrying a gun in the trunk of his car. Respondent's wife stated further that he had been in eight mental hospitals; that she saw no improvement in him; and that about a year before the hearing he had tried to strangle her.

Dr. DePara, a psychiatrist, testified at the hearing. He said that he first heard of respondent when the intake psychiatrist informed him that respondent came into the mental health facility. Dr. DePara related that he was told by the intake psychiatrist that the respondent was unable to stay but would have to go back to the House of Correction because respondent was too dangerous and should be in a maximum security hospital. Respondent's hearsay objection to Dr. DePara's testimony concerning the intake psychiatrist's report and statement was overruled by the court. Dr. DePara then related that he had read the intake psychiatrist's report and had consulted with him concerning respondent.

Dr. DePara asserted that respondent, on this occasion, remained overnight. Dr. DePara interviewed the respondent in the morning. He found respondent pacing the floor. Respondent told Dr. DePara he was hearing voices, was unable to control himself and "would explode any moment" to attack and destroy people. The doctor stated that respondent was then placed on medication and returned to the House of Correction.

Dr. DePara further related that he next saw respondent on December 18, 1975, at which time respondent was "on high doses of medication," and was very quiet and more relaxed. He testified that respondent told him that he still heard the voices and was still confused, but that he was "cool," had been sleeping better, had no urge to injure himself or others and desired to continue hospitalization. The doctor stated that respondent was improved since the last time he saw him, that respondent had enough insight to know that he needed help, and that respondent knew he was unable to control himself. Dr. DePara concluded that respondent was still dangerous, that he would continue to be so until he stopped hearing the voices, that he needed continued hospitalization, and that without hospitalization, the voices would return and respondent regress. Dr. DePara was of the opinion respondent would injury himself or others if removed from hospitalization. When asked if the respondent needed to be hospitalized in a maximum security facility, Dr. DePara stated, "Now I think we can control him in a hospital like Madden [a State Department of Mental Health facility] or in Downey, or in Hines [Federal veterans hospitals]."

After arguments by counsel for both sides, at which the State recommended hospitalization through the Department of Mental Health and respondent's counsel requested commitment to a veteran's facility, the trial court found that respondent had a mental disorder which caused him to be "extremely dangerous" to himself and others, and committed him to the Department of Mental Health for hospitalization. The court recommended a maximum security facility.

OPINION

Respondent contends that in finding him in need of mental treatment, the trial court improperly considered the hearsay testimony of Dr. DePara. He argues that under the case of *People v. Black* (1937), 367 Ill. 209, 10 N.E.2d 801, the testimony of an expert witness which is based in part upon the reports and statement of others not available for cross-examination, such as the intake psychiatrist in this case, constitutes hearsay and is therefore inadmissible as evidence. (See McCormick, Evidence §246, at 584 (2d ed. 1972).) He urges that without such inadmissible hearsay evidence, the record fails to demonstrate a basis for his commitment.

The State argues that Dr. DePara's testimony concerning the intake psychiatrist's report and statement was not hearsay, under the authority of *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171. The State argues that, in any event, the independent observations testified to by Dr. DePara formed a sufficient medical basis for commitment, without regard to his testimony as to the intake psychiatrist's report and statement.

■■ Section 1—11 of the mental health code of 1967 (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11) defines a person in need of mental treatment as one who is afflicted with a mental disorder, other than mental retardation, where, as a result of such disorder, he is reasonably expected at the time such determination is made or with a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for his own basic welfare or needs. A determination to commit a person under the mental health code must be supported by clear and convincing evidence, and the medical evidence supporting such a determination must be likewise clear and convincing. See *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733, *appeal denied* (1974), 56 Ill. 2d 584.

The State points out that the supreme court in *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171, held that the decision in the *Black* case, here relied upon by respondent, was not to be given effect where it applied to the admission of expert medical opinion concerning the sanity of an accused which was based in part on medical or psychological records compiled by others, which records were not admitted into evidence. It would thus appear that, if Dr. DePara in part based his opinion as to respondent's condition upon what he was told by the intake psychiatrist, such opinion was properly admitted into evidence under the *Ward* case.

However, the instant case clearly is distinguishable from *Ward*. In *Ward*, Dr. Kelleher, the psychiatrist who testified, while admitting that he based his conclusion as to the sanity of the defendant in part on the examination and report of another psychiatrist, noted that he "supervised" the examination conducted by such other psychiatrist. He also asserted that the report of the other psychiatrist was an official opinion rendered by his subordinate and at his direction. Thus, the court in *Ward* stated that " '[s]ince the report was made under the direction and supervision of Dr. Kelleher, he was fully capable of testifying to the matters in the report and was available for cross-examination on the report.' " 61 Ill. 2d 559, 565, 338 N.E.2d 171, 175.

Further, the court in *Ward* noted:

"For these reasons we are of the opinion that insofar as *People v. Black* applies to the admission of expert medical opinion as to an accused's sanity based, in part, on medical or psychological

records compiled by others which are not admitted into evidence, that decision is no longer to be given effect. If such reports are of a type customarily utilized by the medical profession, then these reports may be used as factors by an expert in the determination of his opinion as to an accused's sanity even though the reports are not admitted into evidence. The restriction that these materials be commonly used by the medical profession attributes a high degree of reliability to them. *People v. Sugden* (1974), 35 N.Y.2d 453, 323 N.E.2d 169; *Smith v. State* (Ind. 1972), 285 N.E.2d 275, *cert. denied,* 409 U.S. 1129; Annot., 55 A.L.R.3d 551 (1974)." *People v. Ward* (1975), 61 Ill. 2d 559, 568, 338 N.E.2d 171, 177. See also special concurring opinion of Justice Orr in *People v. Black* (1937), 367 Ill. 209, 216, 10 N.E.2d 801, 804; *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 339 N.E.2d 10.

■■ In the present case no foundation was presented to indicate Dr. DePara supervised or directed the intake psychiatrist in his examination or evaluation of the mental condition of the respondent. Additionally, no evidence was presented that the type of report prepared by the intake psychiatrist and relied upon by Dr. DePara was "of a type customarily utilized by the medical profession* * *." Necessarily, we agree with respondent that the standards for admissibility of the "hearsay" testimony set forth in *Ward* were not met in this case. Nevertheless, we find the error in allowing the inadmissible hearsay into evidence was harmless. *People v. Murdock* (1971), 48 Ill. 2d 362, 270 N.E.2d 21, *cert. denied* (1971), 404 U.S. 957, 30 L. Ed. 2d 274, 92 S. Ct. 324.

■■ The evidence clearly shows that Dr. DePara's testimony concerning respondent's mental disorder, which was based upon Dr. DePara's independent observations of respondent and apart from what he was told by the intake psychiatrist, was ample and sufficient to form a medical basis for respondent's commitment. The State's evidence, adduced by respondent's wife and by Dr. DePara, demonstrated clearly and convincingly that respondent had a mental disorder which rendered him extremely dangerous to himself and others, and that he was in need of mental treatment and hospitalization. (See *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733, *appeal denied* (1974), 56 Ill. 2d 584; Ill. Rev. Stat. 1975, ch. 91½, par. 1—11.) Considering the nature and extent of the admissible evidence presented, the court could come to no other conclusion than it did. No prejudice came to the respondent by allowing into evidence the impermissible hearsay.

■■ Finally, we note no inconsistency in the court recommending that respondent be placed in a maximum security setting while being treated, although Dr. DePara appeared to indicate that the respondent could be

treated in a less secure facility. The determination and judgment of the court are readily supportable by the admissible evidence presented in this case.

For the foregoing reasons, the commitment of the respondent is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.