THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDY COOPER, Defendant-Appellant.

Second District    No. 77-290

Opinion filed October 19, 1978.

Michael Mulder, of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with the offense of indecent liberties with a child (Ill. Rev. Stat. 1975, ch. 38, par. 11—4). The State subsequently filed a petition seeking psychiatric examinations and a hearing under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01 *et seq.*). After a bench trial, the defendant was found to be a sexually dangerous person, and ordered committed to the custody of the Department of Corrections. He appeals, contending that (1) the State's evidence was insufficient to prove beyond a reasonable doubt that the defendant was a sexually dangerous person and (2) the trial court erred in admitting certain psychiatric testimony, which was based on a

psychological report, where the reliability of the report had not first been established. We affirm.

An information charging the defendant with indecent liberties with a child was filed on May 7, 1976. On June 9, 1976, the defendant moved for the appointment of two psychiatrists to examine him in accordance with the provisions of "An Act to provide for trial in a circuit court and for a psychiatric examination of persons charged with sexual crimes against children" (Ill. Rev. Stat. 1975, ch. 23, par. 2401 *et seq.*). The trial court granted the motion and appointed Doctors Graybill and Hamann. On June 29, 1976, Dr. Graybill sent a letter to the court which concluded that the defendant "appears to be an insecure individual, uncertain of his masculinity, entertaining considerable hostility particularly toward female figures in his life * * *." On July 16, 1976, the State filed a petition under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01 *et seq.*), seeking the appointment of two qualified psychiatrists to examine the defendant, pursuant to the Act. The court entered an order providing that the defendant was to be examined by Doctors Graybill and Hamann, for the purpose of determining whether the defendant was a sexually dangerous person, within the meaning of the statute. On August 24, 1976, Dr. Graybill advised the court by letter that he had conducted a second examination of the defendant, and that "* * * in view of this man's repeated sexual involvements, the only information I can add to my letter to you dated June 29, 1976, is that this man is a seriously disturbed and sexually dangerous individual." There is no similar report or letter from Dr. Hamann in the record. However, counsel for defendant informed the court that he had received Dr. Hamann's report, which Dr. Hamann subsequently referred to during his testimony.

At trial, the complainant testified that she was 11 years old on April 27, 1976, when the defendant called and requested that she come to his home. She went to the house where the defendant lived with his girl friend. After the defendant's girl friend left, the defendant called the complainant over to him, pulled her down on his lap, and started kissing her. The complainant told the defendant that she had to leave, but the defendant locked the door, and told the complainant that there was something that he wanted to show her in the bedroom. The complainant went into the bedroom and the defendant closed the door, turned off the light, kissed the complainant, and pushed her down on a bed. The defendant unzipped the complainant's jacket, unbuttoned her shirt, and put his hand under her bra strap, near the buckle. He kissed her again, inserting his tongue into her mouth. The complainant began to struggle, and the defendant told her to get up and button her shirt. She did so and when the defendant opened the bedroom door, she ran out, unlocked the front

door and left. The complainant testified that on the day before this incident she had told the defendant that she was 11 years old.

Over defense objection, the trial court admitted a certified copy of a conviction entered against the defendant in Stephenson County in 1972, after the defendant had pleaded guilty to the crime of contributing to the sexual delinquency of a child.

The State also presented testimony by both of the examining psychiatrists. Dr. Carl Hamann testified that he was familiar with the statutory definition of a sexually dangerous person and that he had worked with the definition for many years, having given testimony under the former statute as long ago as 1940. Dr. Hamann stated that he had elicited a case history from the defendant, including the defendant's account of the earlier incident in Stephenson County, involving a young girl. The defendant's mother had become a semi-paraplegic after the defendant's birth, and the defendant had been forced to do household work, tasks which he bitterly resented. Defendant had been demoted seven times while in the Army because of getting into fights. He told Dr. Hamann that he had been stopped 50 to 100 times by the police during the past year, "most frequently on suspicion of some sexual circumstances." He was critical of the legal representation he had received and stated that both Dr. Graybill and the judge presiding over his case were prejudiced against him. Dr. Hamann testified that although the defendant did not have paranoia in the diagnostic sense, his suspicions were a "paranoid type of behavior." Dr. Hamann said that the defendant "had a great tendency of insecurity and needed to prove his masculinity," and was "a little hostile toward women." These conclusions were confirmed by the "Minnesota Multi-Phasic Test." Dr. Hamann concluded that if the current charge against the defendant were true, he would regard the defendant as sexually dangerous within the meaning of section 1.01 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01).

Under cross-examination, Dr. Hamann admitted that he was not familiar with all of the details of the "MMPI test," although he knew that the test could be used to detect serious character disorders or depressive traits. He also conceded that there was no psychological definition of a "sexually dangerous person," and that this was solely a legal term. He stated that he would regard a person "with sexual problems who tends to act out aggressively" as dangerous sexually and in other ways. When asked what charge he was referring to when he stated that if the charge presently pending against the defendant were true, he would regard the defendant as sexually dangerous, Dr. Hamann exhibited some confusion; counsel asked him if he meant "the indecent liberties charge with a minor and not the sexually dangerous person [charge]," and Dr. Hamann

responded, "it was sexual involvement, whatever, I don't know what it was." Dr. Hamann admitted that he had no way of knowing for certain whether the defendant's various suspicions were justified.

The other psychiatrist who testified, Dr. Graybill, was in general agreement with the findings made by Dr. Hamann. Dr. Graybill stated that he was familiar with the statutory definition of a sexually dangerous person and that he had worked with the statutory definition ever since he began practicing in Illinois in 1955. He had first seen the defendant in regard to the charge in Stephenson County in 1971, at which time he had obtained information regarding the defendant's background. At that time the defendant had told Dr. Graybill that his inlaws had harassed him after his unsuccessful marriage, by phoning his employers and getting him fired from every job opportunity he had had; the defendant claimed that, "they have all sworn to get me." It was Dr. Graybill's opinion in 1971 that the defendant suffered from what is classed as a "personality disorder." In the interview after his appointment in this case, the defendant stressed that he had been harassed by local police, and claimed that the police had beaten him up, which caused him to be hospitalized for 8 days at a time. Dr. Graybill stated that the defendant "demonstrated thought conduct with a strong paranoid flavor." After a subsequent examination of the defendant, Dr. Graybill concluded that the defendant was a sexually dangerous person, within the meaning of the statute.

Under cross-examination, Dr. Graybill conceded that if an individual's suspicions and fears were grounded in fact, then the individual could not be regarded as paranoid. He also conceded that it was possible that he had considered the test results from the "Minnesota Multi-Phasic Inventory" test in making his evaluation, although he could not recall whether or not he had received the test results, prior to making his report. When asked to define a "sexually dangerous" person, Dr. Graybill responded that such a person was "an individual who has a propensity for behaving aggressively in a sexual area, particularly involving younger children * * *." When asked to clarify what he meant when he used the term "aggressive," Dr. Graybill responded that a person could be "aggressive" without the use of force.

At the conclusion of this cross-examination, the trial judge read the statutory definition of a sexually dangerous person to Dr. Graybill. The court then asked him if he had an opinion, "based on all of the data" he had accumulated and considered "both in 1971 and 1976," as to whether the defendant was a sexually dangerous person. Dr. Graybill responded that he believed that the defendant was a sexually dangerous person "since he fulfills all of the requirements of that statute."

The only witness presented by the defendant was his girl friend, who testified regarding events immediately prior to and after the incident on

April 27, 1976. No psychiatric testimony was presented by the defendant.

■■ Dr. Hamann's apparent failure to file his report was a violation of section 4 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1975, ch. 38, par. 105—4), which requires that the court appointed psychiatrists file a written report with the court after their examination. However, since defense counsel was evidently furnished with a copy of Dr. Hamann's report prior to trial and since no issue was raised either before the trial court or this court, regarding Dr. Hamann's failure to file his report, we do not feel that the failure to file a report is relevant to the issues on appeal, or by itself, requires a *sua sponte* reversal of the judgment. *Cf. People v. Pygott* (1965), 64 Ill. App. 2d 284.

■■ In arguing that he was not proven beyond a reasonable doubt to be a sexually dangerous person, defendant has attacked the State's proof in a number of particulars. He asserts that the State failed to prove that the defendant suffered from a mental disorder; however, the psychiatric testimony established that the defendant showed indications of paranoia, had doubts about his own masculinity and exhibited hostility against women. Further, the evidence showed that the defendant had engaged in aggressive sexual advances, forcing himself upon an 11-year-old girl— conduct clearly manifesting a mental disorder. The defendant has argued that even if there was proof of a mental disorder, there was no proof that the mental disorder existed for not less than 1 year proceeding the filing of the State's petition. (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01.) Yet, Dr. Graybill testified that he had diagnosed the defendant in 1971 as a "passive-aggressive person" who might, under the influence of alcohol, "act out of an aggressive manner"; although his condition was classed as a "personality disorder" in 1971, continued psychiatric treatment was deemed necessary. Dr. Graybill found that the same diagnosis could be applied to the defendant in 1976, "with the addition of a much stronger paranoid flavor to his present symptoms." We believe that such evidence of a long standing "personality disorder" suffices as proof of a "mental disorder" which has existed for more than 1 year prior to the filing of the State's petition herein. *People v. Thorpe* (1977), 52 Ill. App. 3d 576.

The defendant has argued that the conclusions of the two State psychiatrists that the defendant was sexually dangerous should be disregarded. Dr. Hamann's opinion is asserted to be "meaningless" since Dr. Hamann "did not have a full understanding of the allegations" against the defendant, as evidenced by his confusion under cross-examination as to the nature of the charge brought against the defendant. However, the fact that Dr. Hamann became confused about the title of the offense under which the defendant was charged does not demonstrate that he was unaware of the factual allegations underlying the charge. The

defendant argues that the psychiatrists applied a definition of "sexually dangerous" which was broader than the definition contained in the statute, since both Doctors Graybill and Hamann indicated that a person could be "sexually dangerous" without resorting to the use of force; it is apparently the defendant's view that it is necessary for the State to prove a propensity to commit sex crimes with the use of force in order to make out a *prima facie* case under the Sexually Dangerous Persons Act.

However, the statute itself provides that persons "* * * who have demonstrated propensities toward acts of sexual assault *or acts of sexual molestation of children* * * *" (emphasis added), and fall within the other requirements of the Act are sexually dangerous. (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01.) It seems clear in context that the psychiatrists, in defining "sexually dangerous," were including conduct involving not only the use of force, but also the incapacity of the victim to consent to the sexual advance, or in other words "sexual molestation" of children. In so defining the term "sexually dangerous," the psychiatrists remained well within the intent of the statute.

■■ In sum, the testimony of Drs. Hamann and Graybill, when coupled with that of the complainant, in the absence of any psychiatric testimony by the defense, clearly sufficed to prove beyond a reasonable doubt that the defendant was a sexually dangerous person.

■■ Finally, the defendant has argued that it was error to admit psychiatric testimony which was based in part upon a report of the results of a "Minnesota Multi-Phasic Personality Inventory" test, where the report's reliability was not first established. We disagree. Psychological reports which are of a type customarily utilized by the medical profession, may be considered by an expert witness in the determination of the mental state of the individual in question. (*People v. Ward* (1975), 61 Ill. 2d 559.) Here, Dr. Hamann testified that the "Minnesota Multi-Phasic Personality Inventory" test was capable of detecting serious character disorders or depressive traits and was designed to do so without the use of psychiatric personal time. Obviously, such a test report would be of a type customarily utilized by the psychiatric profession, and the fact that such a report was received by Drs. Hamann and Graybill would not warrant the exclusion of their testimony.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is therefore affirmed.

Judgment affirmed.

BOYLE and WOODWARD, JJ., concur.