THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS MELLO, Defendant-Appellant.

Third District    No. 79-426

Opinion filed August 22, 1980.

STOUDER, J., specially concurring.

John H. Reid and John F. Erbes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, Martin N. Ashley, and Gaye Bergschneider, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Thomas Mello was charged by indictment with two counts of reckless homicide. Following a bench trial, Mello was found guilty and sentenced to a one-year term of incarceration in the Department of Corrections.

On appeal in this court, it is contended by defendant Mello that the State failed to prove the defendant guilty of reckless homicide beyond a reasonable doubt. Specific issues are raised as to (1) whether the evidence showed that the defendant drove a motor vehicle at a speed which was greater than reasonable, and (2) whether the evidence showed that the defendant operated a motor vehicle while under the influence of intoxicating liquors.

Illinois State Police Trooper Watson testified concerning his investigation of the automobile accident involving defendant and a vehicle in which Tara Jean Sitarz and Eileen R. Sitarz were killed. The officer testified that the Ford automobile was in the middle of the road facing north to northeast when he arrived at the scene of the accident and that the right front passenger side of the automobile was severely damaged. He saw Mrs. Sitarz being removed from the vehicle. The automobile which coillided with the Sitarz automobile, a Buick, was then located approximately 144 feet from the Ford. The body of the Buick had been separated from the frame, and the engine and transmission were also detached from the frame. The officer also observed in the interior of the Buick an unopened bottle of beer and a cardboard six-pack container on the floorboard.

The officer determined from his investigation and skid marks that the Ford had left skid marks that measured 84 feet. The Buick had left no skid

marks. There were two gouge marks in the pavement near the Ford, in the southbound lane. These marks, the trooper testified, were the result of the vehicle being driven into the pavement by the impact of the collision.

The accident occurred at a curve in the road where the speed limit was 55 miles per hour. The roadway had been recently resurfaced so there were no permanent lines painted on the roadway. There were, however, yellow reflectorized strips on the road to mark the centerline. These strips were 18 to 24 inches in length and were placed 50 to 60 feet apart. On the night of the accident, the pavement was dry and the weather clear. There was a sign warning defendant of the oncoming curve where the accident occurred.

William Sitarz testified that he had left the bowling alley after he consumed two beers and that his wife Eileen and his two daughters, Amy and Tara, were in the autmobile with him. Eileen and Tara were sitting in the front passenger seat. The Sitarz automobile was traveling south on New Avenue at 50-55 miles per hour. Upon approaching the curve, Sitarz saw a pair of headlights coming his way and he estimated this vehicle to be about 100 feet from him at this point. The oncoming vehicle swayed into his lane, he said, and he responded by stepping hard on his brakes and veering to the right. When he saw that this maneuver would not avoid a collision, he cut his wheels hard to the left, but the oncoming vehicle collided head on with him. The impact threw Mr. Sitarz into the windshield and then he fell back and grabbed his wife and daughter. His wife was dead; his daughter had blood on her face and her head was limp. Mr. Sitarz then got out of his car and flagged down a truck, whose driver called for help on a C.B. radio.

Mr. Sitarz stated that there was a three-to-five second interval between the time he first saw the oncoming headlights and the collision. He stated that, from his observation of this vehicle, he could not estimate its speed, but he felt it was traveling at a "tremendous speed." The young Sitarz child had sustained a fractured skull. Defendant was alert, but sleepy. He had a large cut on the right side of his cheek and other multiple injuries. The doctor who treated those injuries noticed an ethanol smell emanating from defendant's facial area. Defendant was transferred to the intensive care unit. Defendant was also given a blood alcohol test. Testimony as to the test was objected to by defendant, but the doctor testified that defendant had multiple injuries and acute ethanolism.

Defendant made a motion to strike the testimony as to the test, which the court denied, ruling that the lab reports were not excludable as hearsay since they were made in the ordinary course of business. Other evidence supported the position taken by the court. Motion was made by defendant to strike the testimony of the two doctors regarding their conclusions based in part upon the lab reports prepared by other hospital personnel showing the intoxication of defendant. The court denied the motion and, also, denied a motion for directed verdict in favor of defendant.

As a result of the evidence presented, the trial court found defendant guilty of reckless homicide.

■■■ The evidence in the case showed that defendant operated a motor vehicle while under the influence of intoxicating liquors and that he drove the vehicle at an excessive rate of speed under the circumstances. Also, experts may render opinions and testimony based partially on reports which have not been admitted into evidence. (*People v. Cooper* (1978), 64 Ill. App. 3d 880, 885, 381 N.E.2d 1178, 1183; *Montefusco v. Cecon Construction Co.* (1979), 74 Ill. App. 3d 319, 323, 392 N.E.2d 1103, 1105; *People v. Rhoads* (1979), 73 Ill. App. 3d 288, 314-15, 391 N.E.2d 512, 531.) Our court in *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 339 N.E.2d 10, relied upon *People v. Ward* (1975), 61 Ill.2d 559, 338 N.E.2d 171, holding that expert medical opinion as to a party's sanity could be based, in part, on medical or psychological records compiled by others which are not admitted into evidence. The admissibility of such testimony is an exception to the hearsay rule.

In the *Ward* case, the psychiatrist who had directed and supervised the preparation of the report testified and was available for cross-examination and the report itself was admitted at the request of the defendant. The court, however, stated that

"* * * even if these reports had not been admitted into evidence, there would not have been error in the propriety of Doctor Kelleher expressing his opinion as to defendant's sanity predicated, in part, upon these reports.

* * *

If such reports are of a type customarily utilized by the medical profession, then these reports may be used as factors by an expert in the determination of his opinion as to an accused's sanity even though the reports are not admitted into evidence. The restriction that these materials be commonly used by the medical profession attributes a high degree of reliability to them." (*People v. Ward* (1975), 61 Ill.2d 559, 566-68, 338 N.E.2d 171, 176-77.)

The laboratory test, the blood analysis, was prepared by a laboratory technician who had participated in the preparation of the report. He was available for cross-examination. The defendant in the instant case, therefore, cannot assert that the contents and conclusions of the laboratory analyst were unavailable either to him or to the court. The expert opinion was properly admitted.

In the case of *In re Smilley* (1977), 54 Ill. App. 3d 31, 369 N.E.2d 315, unlike *Ward* and the instant case, the preparer of the document was not available for cross-examination and the report was not shown to be of a type customarily used within the medical profession. Similarly, in *Prince v.*

*Hutchinson* (1977), 49 Ill. App. 3d 990, 365 N.E.2d 549, cited by defendant, the context in which that opinion testimony was offered was in response to a hypothetical question. That hypothetical question assumed facts for which the source was not known.

In the instant case, prior to receiving the results of the blood alcohol test, it has been determined that defendant had no skull injuries which would have caused the slurred speech and disorientation he was exhibiting, and the blood alcohol tests were received primarily as confirmation of the opinions of the treating physicians that defendant was intoxicated. After receiving the results of the blood alcohol test, the doctor concluded that all of the defendant's abnormal behavior was due to intoxication and not to any of his other injuries. This expert opinion, based on direct observation and laboratory testing, was properly admitted and reasonably supports a finding that defendant was intoxicated. The testimony also refutes defendant's contention that the expert witnesses testified only regarding defendant's addiction to alcohol and not to his intoxication at the time of the offense. The medical testimony clearly referred to defendant's intoxication at the relevant time.

The evidence that defendant was driving the vehicle at a rate of speed in excess of the speed limit, together with the damage to the vehicles and the absence of skid marks by defendant's vehicle, with the aggravating factor of intoxication, when taken in conjunction with the actual facts established by observation of the vehicles and testimony of the plaintiff, constituted recklessness. The medical expert testimony of intoxication, combined with the evidence of defendant's smell of alcohol and defendant's slurred speech and other symptoms, which were not the result of the accident, supported the conclusion of the trial court that defendant was intoxicated beyond a reasonable doubt and was guilty of reckless homicide under the facts in evidence in the case.

The trial court heard the testimony of the witnesses and came to a conclusion supported by the record, that defendant was guilty of reckless homicide. On the basis of the record, we find no support for the contention of the defendant that he was not proven guilty of reckless homicide beyond a reasonable doubt.

For the reasons stated, therefore, the judgment and sentence of the circuit court of Will County are affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

I concur with the reasoning and result reached by my colleagues. As the issues have been presented on this appeal, I believe *People v. Ward*

(1975), 61 Ill.2d 559, 338 N.E.2d 171, does support the propriety of the doctor's testimony. However, I feel constrained to note that no issue was presented as to the propriety of the medical opinion based on a report which would have been incompetent evidence had the same been proffered directly. For instance, in the instant case a foundation for admitting the laboratory report was established, but the report itself was never proffered as evidence. If the laboratory report could not have been admitted as evidence, then it well might be the opinion testimony based on it would have been improper. Since the defendant's objection was based solely on the fact the laboratory report was not admitted as evidence rather than on any claim the report would have been inadmissible, I agree with my colleagues, but with the caveat that the competency of such reports might be material.