LINDA C. SMITH, Plaintiff-Appellant, *v.* RICHARD A. WILLIAMS, Defendant-Appellee.

(No. 75-76; ▮▮▮▮▮▮▮▮

Fifth District—December 10, 1975.

Nick D. Vasileff, of Madison, for appellant.

678

Freeark & Harvey, P. C., of Belleville (Ray Freeark, of counsel), for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This case arose from a collision between automobiles driven by plaintiff, Linda C. Smith (now Parmeley), and defendant, Richard A. Williams, on September 20, 1969. The defendant admitted liability and the sole issue presented to the court was the extent of injury sustained by plaintiff as a consequence of the collision. The jury awarded the plaintiff $100.

Plaintiff brings this appeal and raises three issues: (1) whether the court erred in permitting witness Robert Martin to read from records not admitted in evidence; (2) whether the court erred in permitting Dr. John Tierney to read from a report of Dr. Silvana Menendez, which was not admitted into evidence; and (3) whether the verdict upon which the judgment was entered is against the manifest weight of the evidence.

Plaintiff's first contention is that the trial court erred in allowing Robert V. Martin to testify concerning the attendance records of plaintiff at the Manpower Training Center in East St. Louis, Illinois. Mr. Martin appeared as a witness for the defendant in response to a subpoena *duces tecum* with the Manpower records of the plaintiff. Mr. Martin stated that he was deputy director of the center and custodian of trainee records. During the time when plaintiff attended the center, however, Mr. Martin was not employed by the center, did not personally make any of the record entries, and did not supervise the making of any entries.

In response to questions asked by defense counsel Mr. Martin was allowed to testify that plaintiff had begun her training program on September 29, 1969 (9 days after the auto collision involved herein) and had terminated on January 29, 1970. He further testified that during that time period plaintiff had 41 absences for which various medical reasons had been given none of which were related to the injury plaintiff allegedly received in the auto accident. He stated that there were letters or reports from a Dr. McCann and a Dr. Barrow in the Manpower Center file kept on plaintiff, which set forth medical excuses for some of plaintiff's absences.

Defense counsel asserted that the responses of Mr. Martin were elicited for the purpose of impeaching plaintiff in that she had testified that she had commenced the Manpower training program prior to her accident and that she had not been treated by any doctors other than Dr. Wilson H. West and Dr. Dominic Verda between the time of the accident and March 1971.

It is apparent from the record that none of this testimony of Mr. Mar-

tin was made from firsthand knowledge. His responses were made by means of his constantly referring to matters contained in the file which he had brought. None of the items contained in the file, however, were entered into evidence.

Plaintiff contends that all of Mr. Martin's testimony was hearsay and should have been excluded and that the jury should have been instructed to disregard it. Defendant, on the other hand asserts that plaintiff has waived the right to raise this issue on appeal, by failing to make timely and specific objections to the testimony and by failing to specify the error, if any, in her post-trial motion. Defendant further asserts that even if plaintiff has not waived the right to raise such issue on appeal, nevertheless, this court should hold that the testimony was properly admitted under the business records exception to the hearsay rule, Supreme Court Rule 236 (Ill. Rev. Stat., ch. 110A, § 236).

Initially, we must agree with plaintiff that the testimony of Mr. Martin was hearsay. "Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (McCormick, Handbook of the Law of Evidence § 246, at 584 (Cleary 2d ed. 1972).) Mr. Martin's testimony consisted of a summary of out-of-court written statements about plaintiff's attendance, absences, and health. It was given to prove the truth of the matters asserted in the statements. The most obvious indication of the hearsay character of this testimony occurred when defense counsel asked Mr. Martin whether any of plaintiff's absences from the school were by reason of medical treatment by doctors other than Dr. West or Dr. Verda. To this question Mr. Martin responded, "Well, I'll have to go through and check to see the doctor's statements, whose signature on it."

Mr. Martin testified, not from firsthand knowledge, but only by constant reference to the notes and recordings in the file which he had brought with him pursuant to the subpoena *duces tecum*. The materials in the file were not, however, used to refresh the memory of Mr. Martin, because he had no memory of what was contained therein. The use of the materials cannot, therefore, be justified under the rule allowing for refreshing the memory of a witness.

■■ Similarly, Mr. Martin's reference to the records cannot be deemed within the rule of past recollection recorded. Before that rule can be invoked four elements must be met: (1) the witness must have had firsthand knowledge of the event recorded; (2) the written statement must be an original statement made at or near the time of the event and while the witness had a clear and accurate memory of the event; (3) the wit-

ness must lack any present recollection of the event; and (4) the witness must vouch for the accuracy of the memorandum. (McCormick, Handbook of the Law of Evidence § 299, at 712 (Cleary 2d ed. 1972).) The first two elements of the rule are clearly absent here.

■■ Nor was Mr. Martin's testimony proper under the business records rule, Supreme Court Rule 236. That Rule provides in part:

> "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility." (Ill. Rev. Stat., ch. 110A, § 236.)

The language of the first sentence of this Rule makes it apparent that it is the business record itself, and not the testimony of a witness who makes reference to the record, which is admissible.

> "Like the Federal Business Records Act, which it adopts, the rule is designed 'to permit the admission of business memoranda which impart a circumstantial guarantee of trustworthiness.' United States v. Hickey, 360 F.2d 127, 143 (7th Cir. 1966)." (Emphasis added.) (Ill. Ann. Stat. ch. 110A, § 236, Historical and Practice notes (Smith-Hurd 1968).)

Under this Rule, once the custodian of the records has testified as to the manner in which the records were kept, that they were kept in the regular course of business, and that it was part of the business to keep such records, the function of the custodian at the trial is completed. The records themselves should be introduced rather than the custodian giving his summation of them.

Furthermore, items (such as notes from a doctor) which are kept in a business file, but which were not made by the business entity to which the file belongs, are not part of a business record for the purpose of admission under the business records rule, for the rule applies to entries made by the business, not to items merely retained in its file. *Benford v. Chicago Transit Authority*, 9 Ill.App.3d 875, 293 N.E.2d 496.

From the foregoing it is apparent that the testimony of Mr. Martin was hearsay which was not within an exception to the hearsay rule. Furthermore, had defendant sought to introduce the records of the Man-

power Training School, the notes of Dr. Barrow and Dr. McCann could not have been admitted under the Business Records Rule.

On the other hand, however, it has been recognized in Illinois that *generally* "* * * testimony offered solely for the purpose of impeachment is not subject to the objection that it was hearsay. Such evidence is not admitted as proof of the truth of the facts stated out of court, but to cast doubt on the testimony of the witness by showing his inconsistency." (*People v. Armstrong,* 22 Ill.2d 420, 424, 176 N.E.2d 755, 757.) In the instant case defense counsel stated to the trial court that the testimony of Mr. Martin was produced only to impeach plaintiff in that plaintiff had previously testified that she had seen no doctors other than Dr. West and Dr. Verda between the time of the accident and March 1971.

However, regardless of the purpose for which the testimony of Mr. Martin was elicited, the most important consideration here is the fact that plaintiff made no objection to the testimony of Mr. Martin upon which the court could properly have excluded that testimony. Plaintiff's only objections to the testimony concerned the fact that Mr. Martin was not the original entrant of the records and had not been the custodian of the records when they were compiled. Plaintiff made no objection that the records themselves should be admitted instead of the witness testifying as to what was contained in them.

■■ It is well settled that the witness need not have been the original entrant or the custodian of the records at the time they were compiled in order for the witness to have been able to *produce* the records under the Business Records Rule. (*Benford v. Chicago Transit Authority;* also see the Committee Comments to Supreme Court Rule 236(a), Ill. Ann. Stat., ch. 110A, § 236(a) (Smith-Hurd 1968), and *Secco v. Chicago Transit Authority,* 6 Ill.App.2d 266, 127 N.E.2d 266.) It is not settled, however, even under the principle recognized in *People v. Armstrong,* that after having produced the records the witness-custodian can be allowed to give an oral summary of them. Nevertheless, since the trial court did not have a proper objection before it upon which the testimony could have been excluded, we cannot say the court erred in allowing the testimony. *DeMarco v. McGill,* 402 Ill. 46, 83 N.E.2d 313; *Johnson v. Jackson,* 43 Ill.App.2d 251, 193 N.E.2d 485.

Plaintiff next contends that the trial court erred in allowing Dr. John Tierney to read before the jury a report of Dr. Silvana Menendez concerning plaintiff. Dr. Tierney appeared pursuant to defendant's subpoena. He testified that, as an attending hospital physician, he had examined

and treated plaintiff in September 1972 during her 6-day hospitalization for severe epigastric pains.

Dr. Tierney testified that during plaintiff's hospitalization he had occasion to refer her to Dr. Menendez, a staff psychiatrist at the hospital. After Dr. Menendez had examined the plaintiff, Dr. Menendez made a consultation report to Dr. Tierney, upon which Dr. Tierney relied in prescribing medicines for plaintiff.

Defense counsel asked Dr. Tierney to read the report of Dr. Menendez, which he had brought with him to the trial. Plaintiff's counsel made an objection to this procedure on the basis that the report was not that of Dr. Tierney and that, if it were read to the jury, it would stand without plaintiff having an opportunity to cross-examine Dr. Menendez concerning the report. The objection was overruled and Dr. Tierney then read the report to the jury.

The report stated that plaintiff had been hospitalized for epigastric pains and that the "organic workup proved to be negative." It stated further that plaintiff had apparently threatened suicide during the hospitalization, that the plaintiff had described a past history of "somatic complaints" and lack of friends. In the report Dr. Menendez diagnosed plaintiff's problem as "depressive neurosis" and recommended "antidepressant and psychiatric follow-up." The report itself was not offered for admission into evidence, and Dr. Menendez was not a witness at the trial.

■■ We are aware of the opinion that plaintiff's arguments regarding the reference by Dr. Tierney in his testimony to the consultation report furnished him by Dr. Menendez are answered by the recent case of *People v. Ward*, 61 Ill.2d 559. In *Ward* the Supreme Court held admissible expert medical opinion as to an accused's sanity based, in part, on medical or psychological records compiled by others which are not admitted into evidence. The court overruled *People v. Black*, 367 Ill. 209, 10 N.E.2d 801, the heretofore governing case which held that the admission of such testimony was impermissible hearsay. Under the authority of *Ward* the testimony of Dr. Tierney, based in part upon the medical report of Dr. Menendez, was admissible as an exception to the hearsay rule.

Finally, the plaintiff argues the inadequacy of the verdict awarded here by the jury. The evidence shows that plaintiff incurred medical and drug bills exceeding $700—but notwithstanding, the verdict was for $100.

■■ Plaintiff cites the following from *Kinsell v. Hawthorne*, 27 Ill.App.2d 314, 319, 169 N.E.2d 678, 681, as expressive of the applicable law:

> "It is the law in Illinois that a verdict should be set aside and a new trial granted for inadequacy of damages where it is clear

that injustice has been done, or where it is obvious that a jury failed to take into consideration proper elements of damage which are clearly proven, or where it is apparent that the jury made a compromise between the guilt of the defendant and the damages sustained by a plaintiff."

We have no quarrel with the rule of the *Kinsell* case but are of the belief that when the facts present here are applied to the rule no violation is apparent. Plaintiff's testimony regarding her injuries and treatment as a result of the accident was sharply contradicted by defendant's evidence and plaintiff was impeached several times on her testimony material to the issue of her injuries and condition. We believe it apparent that the jury chose to disbelieve plaintiff's evidence in regard to the nature and extent of her injuries and the purposes for which treatment was administered to her. Such jury disbelief is supported by the record and the $100 verdict represents just compensation to plaintiff for her damages and injuries stemming from the collision.

Judgment affirmed.

EBERSPACHER and CARTER, JJ., concur.