THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NAPOLEON FOSTER, Defendant-Appellant.

First District (4th Division)   No. 1—87—1972

Opinion filed November 2, 1989.—Rehearing denied December 13, 1989.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, Mark A. Shlifka, and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Napoleon Foster, was convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) following a jury trial in the circuit court of Cook County. The trial court sentenced defendant to the penitentiary for a term of 27 years.

Defendant appeals, contending: (1) the State failed to prove beyond a reasonable doubt an element of the offense. Defendant also contends he was denied a fair trial due to: (2) the trial court's failure to instruct the jury on the offense of attempted armed robbery; (3) the admission of (a) an accomplice's hearsay identification, (b) defendant's arrest warrant, (c) evidence of other crimes and bad conduct; (4) the prosecutor's unfair cross-examination of him; and (5) the cumulative effect of the above-assigned errors. Defendant also contends: (6) the sentencing hearing was fundamentally unfair.

We affirm.

BACKGROUND

Defendant was indicted on one count of armed robbery. The State's case included defendant's oral confession and corroborating evidence from other witnesses. The evidence produced by the State relevant to the issues raised on appeal is summarized as follows.

Felix Martin is the manager of a McDonald's restaurant located at 4830 West Dempster Street, in Skokie, Illinois. On the night of March 4, 1986, Martin was on duty with other employees, including Michelle Nelson, a manager-trainee; Idalene Morton and Paul Edwards.

Defendant was the last customer that evening; Nelson took his order and served him. At approximately 11 p.m., Martin was closing the restaurant; only one door remained unlocked. As defendant began to leave, Martin opened the door for defendant. Defendant turned and put a pistol to Martin's stomach. He ordered Martin, and another employee who was near the door, to walk behind the front counter. Defendant then ordered all of the restaurant employees to move to

the rear of the restaurant and enter the walk-in freezer. They obeyed defendant, who then closed the freezer door.

After a few minutes, defendant opened the door and ordered Martin to leave the freezer and open the store safe. Martin complied, and defendant escorted him back to the freezer. A few minutes later, defendant returned and ordered Paul Edwards to leave the freezer and open the cash registers. The employee did not know how to open them and was returned to the freezer. Defendant then ordered Michelle Nelson to open the cash registers. Martin told defendant that he had the keys to the registers and offered to go in Nelson's place.

Martin and defendant entered the drive-through booth on the west side of the building. Prior to the opening of the cash register in the booth, they saw an Illinois State Police car at the drive-through menu board, approximately 30 feet away from the booth. Defendant shouted "It's the cops," ran to the other side of the store, jumped over the front counter, and fled via the east side door.

There were two police cars at the drive-through menu board. The State trooper in the first automobile saw Martin leaning out of the booth window, waving frantically, and pointing to the other side of the building. The State troopers drove to the other side of the building, saw an automobile starting to back out of a parking space, and blocked it with one of their cars. One of the troopers exited his car and stood at the parked car's right rear bumper.

Corey Fisher was the driver of the car, and defendant sat in the front passenger seat. Defendant opened his door, turned so that his head and legs protruded from the car, and looked back at the troopers. He then darted from the car, ran to the edge of the parking lot, and jumped over a fence. One trooper unsuccessfully chased defendant while the other arrested Fisher.

After more troopers arrived, they, with Martin, searched the restaurant. Eventually, they found and arrested Verdalle (also known as Gaston) Fortner, a former employee wearing a McDonald's uniform. The troopers then opened the freezer door and searched all of the employees before releasing them. Martin testified that, after checking the cash registers, the safe, and his records, approximately $1,200 was missing from the safe.

The Skokie police department assumed the investigation. Detective Robert Jones was assigned to the case that night and spoke with Fortner shortly after midnight on March 5, 1986. Fortner told Detective Jones that the man who fled was named "Dean" or "Deanie." Fortner told Jones initially that "Deanie" was named Michael Campbell. Later that day, after an unsuccessful investigation based on this

information, the police learned that "Deanie" was defendant.

Upon learning defendant's identity, Detective Jones obtained a photograph of defendant from a prior arrest. The photograph was included in an array, which was shown to a restaurant employee, who identified defendant.

Detective Jones then prepared an arrest warrant for defendant, listing defendant's alias as "Deanie," and unsuccessfully tried to locate him. Jones left a business card with defendant's mother. A few days later, defendant called Jones and indicated that he might surrender, but finally decided not to do so.

On the afternoon of April 26, 1986, Jones learned that defendant was in the Skokie jail. Jones and Detective Silverberg, also assigned to the case, arranged for Martin, Nelson, and Edwards to view a lineup that included defendant. Each witness identified defendant. After the lineup, Silverberg took defendant to an interrogation room while Jones telephoned the State's Attorney's office. Assistant State's Attorney Christopher Pfannkuche soon thereafter telephoned Jones and came to the police station.

Silverberg and Pfannkuche testified that defendant gave each of them an oral confession, after waiving his *Miranda* rights prior to each confession. Defendant's confession, as retold by Silverberg and Pfannkuche, was essentially as follows. On March 4, 1986, defendant, Fortner, and a person named George were at Fortner's home drinking and smoking narcotics. They planned to rob a McDonald's restaurant on Dempster Street in Evanston. They telephoned Corey Fisher and asked him to drive to Fortner's home. On Fisher's arrival, Fortner supplied himself with a sawed-off shotgun and supplied defendant with a BB gun.

The four then drove in Fisher's automobile to the Evanston McDonald's, where restaurant employees recognized Fortner. They decided to abort that robbery and, instead, rob the McDonald's in Skokie. In his statement, defendant asserted that he was a friend of Martin's daughter and that Martin knew in advance about the Skokie robbery and was to receive a portion of the proceeds.

The portion of defendant's confession recounting the crime itself followed the testimony of the State's other witnesses. Defendant stated that while he and Martin were in the drive-through booth, he saw the State troopers, shouted "It's the cops," and fled—before Martin opened the cash register. Defendant also mentioned that his nickname was "Deanie," he was in the penitentiary twice before, and that he was a member of a street gang.

In May 1986, Detectives Jones and Silverberg attempted to inter-

view defendant at the county jail, but defendant did not wish to speak to them. In his testimony, Jones added that the·visit was not related to the instant case, but rather was for "a new case [he] was working on."

Defendant's case consisted of the testimony of a friend and that of himself. Defendant's friend testified that on the night of March 4, 1986, defendant and he were at a party near Lake Street and Damen Avenue. He was at the party until approximately 1 a.m., and defendant never left the party during that time.

Defendant testified that he was at the party of which his friend testified until approximately 7:30 a.m. on March 5. He telephoned and met with his parole officer, and went home. Defendant did telephone Detective Jones, but hung up when Jones became hostile and used profanity.

Defendant testified that, although he knew Fortner, "Deanie" was not nor ever had been his nickname. He admitted being convicted of robbery in 1980 and burglary in 1983. Defendant further testified that he was physically coerced into participating in the lineup, that the police denied his repeated requests to use the telephone and for an attorney. Defendant denied making any confession. He was told that he could not use the telephone until he signed the waiver form. He did and then telephoned his mother and his attorney.

On March 27, 1987, the jury convicted defendant of armed robbery, and the trial judge entered judgment on the verdict. On May 12, 1987, the trial judge denied defendant's post-trial motion and, at the close of a sentencing hearing, sentenced defendant to the penitentiary for a term of 27 years. Defendant appeals.

OPINION

I

■■ ■ Defendant first claims that the State failed to prove beyond a reasonable doubt an element of the offense of armed robbery. The State carries the burden of proving beyond a reasonable doubt each element of the offense and the defendant's guilt. (*People v. Ware* (1961), 23 Ill. 2d 59, 62, 177 N.E.2d 362, 364.) On appeal, however, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Collins* (1985), 106 Ill.

2d 237, 261, 478 N.E.2d 267, 276-77.

■ A person commits armed robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force, while armed with a dangerous weapon. (See Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a).) "It is thus obvious that a critical element of the offense of robbery is that the victim be deprived of some property through the actions of the perpetrator." (*People v. Robinson* (1981), 92 Ill. App. 3d 397, 398, 416 N.E.2d 65, 66.) Defendant contends that the State failed to present any admissible evidence of a taking. Defendant argues that the only evidence of a taking in the record is Martin's testimony, which was hearsay.

## A

■ The State initially responds that defendant waived this issue for review by failing to object at trial to Martin's testimony. This assertion is erroneous. Defendant's contention challenges the sufficiency of the evidence. "Only the admissibility and not the inherent weakness of hearsay evidence is waived by the failure to object to its admission." (*Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 29, 418 N.E.2d 421, 428.) It is now clear that a challenge to the sufficiency of the evidence is an exception to the waiver rule and may be raised for the first time on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1131-32, cited in *People v. Lighthall* (1988), 175 Ill. App. 3d 700, 705, 530 N.E.2d 81, 84; *People v. Walker* (1955), 7 Ill. 2d 158, 160, 130 N.E.2d 182, 183.

## B

We now reach the merits of defendant's claim. The only evidence of a taking in the record is Martin's testimony. Martin testified that approximately $1,200 was missing from the restaurant safe. Martin based his determination on three sources: (1) his examination of the cash registers, (2) his examination of the safe, and (3) the restaurant's business records.

Defendant asserts that Martin's reference to the restaurant's business records was hearsay. According to defendant, a reasonable juror would have deduced that the business record was the ultimate basis of Martin's determination. Thus, Martin's hearsay reference to the business record made his determination inadmissible and rendered the element of taking unproven.

■ We cannot accept this argument. Defendant is correct that

Martin's reference to the business record was hearsay; it was the business record itself which was admissible, and not Martin's testimony referring to the record. (See *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 680, 339 N.E.2d 10, 13.) However, defendant failed to object at trial to Martin's hearsay reference. It is quite settled that hearsay evidence, if admitted without objection, is to be considered and given its natural probative effect. (*Collins,* 106 Ill. 2d at 263, 478 N.E.2d at 278; *People v. Akis* (1976), 63 Ill. 2d 296, 299, 347 N.E.2d 733, 735.) After reviewing the evidence in the light most favorable to the prosecution, we conclude that Martin's testimony established beyond a reasonable doubt the element of a taking. Further, we cannot say that the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt.

## II

■ Defendant next claims that he was denied a fair trial due to the trial judge's failure to instruct the jury on the offense of attempted armed robbery. This claim is a continuation of his previous argument. Defendant argues that since there was no admissible evidence that any property was taken, the jury should have been instructed on the offense of attempted armed robbery. Defendant concedes that he did not request the instruction. Thus, the issue is waived. See *People v. Nutall* (1980), 91 Ill. App. 3d 758, 765-66, 415 N.E.2d 628, 634.

■ Defendant goes further and invokes the plain error rule. (See 107 Ill. 2d R. 615(a).) However, before a reviewing court can consider plain error as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed. *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739, 743.

■ We conclude that no error was committed here; the evidence adduced at trial would not have supported an attempted armed robbery instruction. Martin's testimony regarding the taking was uncontradicted. We earlier concluded that his testimony established beyond a reasonable doubt the element of taking. In his confession, defendant never affirmatively stated that he did not take any money from the safe; rather, he stated only that he fled when he saw the State troopers. At trial, he denied any participation in the crime. Thus, the evidence supported only a conviction or an acquittal of armed robbery, "and there is no evidence in this record upon which the jury would have been justified in concluding that the defendant had only attempted to commit armed robbery." (*People v. Davis* (1972), 6 Ill.

App. 3d 622, 625, 286 N.E.2d 8, 10.) Since the plain error doctrine is inapplicable, this issue remains waived.

## III

Defendant next claims that he was denied a fair trial due to the admission of (A) an accomplice's hearsay identification, (B) defendant's arrest warrant, and (C) evidence of other crimes and bad conduct.

## A

■ According to Detective Jones, Fortner identified the man who fled from the scene of the crime as "Dean" or "Deanie." Jones then testified that through further investigation, he learned that that man was defendant. Jones referred to this out-of-court identification twice. Defendant is correct that these references were hearsay. See *People v. Rogers* (1980), 81 Ill. 2d 571, 579, 411 N.E.2d 223, 227.

However, the record also shows that the trial judge sustained defense counsel's timely objection to each reference and instructed the jury to disregard the identification. Thus, the error was rendered harmless. *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 238; *People v. Negron* (1979), 77 Ill. App. 3d 198, 203, 395 N.E.2d 1055, 1059.

## B

Defendant assigns error to references to his arrest warrant made by Detective Jones and Assistant State's Attorney Pfannkuche, and the admission of the warrant itself. Defendant argues that the warrant represents multiple-level, prejudicial hearsay. The warrant listed defendant's alias as "Deanie," and also listed file numbers from the Federal Bureau of Investigation and the Illinois Bureau of Investigation. Additionally, the warrant contained the signature of a judge.

■ The record shows that defendant did not object at trial to Jones' reference to the arrest warrant; thus, the issue is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) The record also shows that Pfannkuche's reference to the warrant was elicited by defense counsel's cross-examination. Where defense counsel elicits particular testimony on cross-examination, and makes no motion that the testimony be stricken and the jury instructed to disregard it, defendant cannot later complain about that which is elicited. *People v. Randall* (1980), 84 Ill. App. 3d 888, 891, 405 N.E.2d 1269, 1272; *People v. Hambrick* (1979), 68 Ill. App. 3d 447, 451, 386 N.E.2d 455, 458.

We additionally conclude that the admission of the arrest warrant itself was harmless error. The record contains overwhelming evidence of defendant's identification and guilt. Defendant confessed to all of the elements of armed robbery, corroborated by substantial evidence, except the element of taking. We earlier determined that Martin's testimony established beyond a reasonable doubt that element. "Considering the evidence in its entirety, there is no reasonable possibility that the jury would have acquitted the defendant had the evidence complained of been excluded." *People v. Ward* (1978), 63 Ill. App. 3d 864, 872, 380 N.E.2d 883, 889; see also *People v. White* (1985), 134 Ill. App. 3d 262, 283, 479 N.E.2d 1121, 1134-35.

## C

Defendant assigns error to the admission of evidence of other crimes, wrongs, and acts. This evidence consisted of admissions in his confession that he had been in the penitentiary previously, he used narcotics on the night of the crime, and that he was a member of a street gang. Additional other-crimes evidence consisted of: references in Jones' testimony to a prior arrest photograph of defendant, and an interview with defendant regarding "a new case"; references in defendant's testimony that he was on parole at the time of the armed robbery, and had prior convictions of theft, robbery, and burglary; and the arrest warrant listing a file number from the Federal Bureau of Investigation.

██ Evidence of the other crimes, wrongs, or acts by a defendant is generally inadmissible into evidence if they have no relevance to the question of the defendant's guilt—other than the inference that he has a propensity to commit crimes. (E. Cleary & M. Graham, Handbook of Illinois Evidence §404.5 (4th ed. 1984).) However, the erroneous admission of evidence of other crimes, wrongs, or acts does not constitute a *per se* ground for reversal. Such an error may be considered harmless where the evidence as a whole shows that the accused is guilty beyond a reasonable doubt. *People v. Pittman* (1984), 126 Ill. App. 3d 586, 590, 467 N.E.2d 918, 922, citing *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 629, 377 N.E.2d 1063, 1070; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 716, 377 N.E.2d 1077, 1086.

██ In the case at bar, the admission of most, if not all, of these items constituted error. However, we have already concluded that the record contains overwhelming evidence of defendant's guilt. We therefore hold that the erroneous admission of these items was harmless.

## IV

Defendant next claims that he was denied a fair trial due to the prosecutor's unfair cross-examination of him. He contends that the prosecutor, over objection, repeatedly asked him if several of the State's witnesses were lying when they testified against him. The record contains several episodes of this inappropriate conduct.

■■ The State concedes error. It is quite settled that this type of cross-examination is improper; a trial judge should not permit it. However, it is equally settled that this error is not sufficiently grave to merit a new trial where there is overwhelming evidence of the defendant's guilt. *People v. Cohen* (1980), 83 Ill. App. 3d 706, 708, 404 N.E.2d 976, 977 (and cases cited therein).

We expressly condemn this trial tactic. However, the evidence of defendant's guilt is overwhelming. Thus, defendant is not entitled to a new trial on this ground.

## V

■■ Defendant next contends that the cumulative effect of the aforementioned errors deprived him of a fair trial. Defendant is correct that while individual trial errors may not require a reversal, those same errors considered together may have the cumulative effect of denying a defendant a fair trial. *People v. Albanese* (1984), 102 Ill. 2d 54, 83, 464 N.E.2d 206, 220.

We must reject defendant's contention. It is not the duty of a reviewing court to determine whether the record in a criminal case is free from error. A court of review will not reverse a conviction merely because error has been committed, unless it appears that real justice has been denied or that the jury's verdict may have resulted from the error. Where the competent evidence shows beyond all reasonable doubt that the defendant is guilty—in other words, where the record clearly shows that the jury could not have reasonably found the defendant not guilty—the error will not ordinarily require reversal of the conviction. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 17, 169 N.E.2d 347, 350.) In the case at bar, the evidence of defendant's guilt is overwhelming. Thus, the aforementioned errors, considered individually or cumulatively, do not require a new trial.

## VI

■■ Defendant lastly claims that his sentencing hearing was fundamentally unfair. He contends that the prosecutor based his argument in aggravation on evidence which he knew to be false. It is true that the knowing use of perjured testimony by a prosecutor denies a

defendant due process of law and requires that the defendant be granted a new trial. The burden of proving that the State knowingly used perjured testimony lies with the defendant. *People v. Smith* (1985), 139 Ill. App. 3d 21, 30, 486 N.E.2d 1347, 1352-53.

The State's case included evidence that the restaurant employees remained locked in the walk-in freezer until State troopers released them. During his argument in aggravation, the prosecutor asserted that defendant's actions would have caused the employees' deaths, but for the intervention of the State police.

However, approximately seven months prior to defendant's sentencing hearing, Fortner pled guilty to a charge of attempted robbery and received a 2½-year prison sentence. At Fortner's hearing, the same prosecutor asserted that Fortner released the employees from the freezer prior to the arrival of the police. Defendant thus reasons that the State troopers' testimony at his trial was false, the prosecutor knew the testimony to be false, but he used it anyway to obtain a more severe sentence. Defendant therefore concludes that his sentencing hearing was fundamentally unfair and asks this court to vacate his sentence and remand for a new sentencing hearing.

■■■ We must reject defendant's reasoning and conclusion. "Inconsistencies between the testimony of witnesses and an alleged improbability of testimony go only to the weight and credibility of the evidence and fall short of establishing a knowing use of perjury." (*People v. Tyner* (1968), 40 Ill. 2d 1, 3, 238 N.E.2d 377, 378.) In the case at bar, defendant has demonstrated inconsistencies in evidence adduced at two separate proceedings, and nothing more. The prosecutor's argument in aggravation was based squarely on the evidence adduced at trial. We hold that defendant's sentencing hearing was fundamentally fair.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.