THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD L. DAVIS *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—88—3163, 1—88—3315 cons.

Opinion filed March 13, 1992.

Randolph N. Stone, Public Defender, of Chicago (Richard E. Gade, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendants-appellants Richard Davis and Teddie McKinley were charged with armed robbery and aggravated criminal sexual assault. The cases were severed, and after separate jury trials, defendants were found guilty on all counts. Defendant Davis was sentenced to two concurrent terms of 18 years' imprisonment, while defendant McKinley was sentenced to two concurrent terms of 20 years' imprisonment. Defendants' appeals have been consolidated, and the following issues are raised: (1) whether the trial court erred in refusing to instruct the jury in the Davis trial on the lesser-included offense of criminal sexual assault; (2) whether the trial court's failure to instruct the jury in the McKinley trial on the lesser-included offenses of criminal sexual assault and robbery was error, despite the fact that the instructions were not requested; and (3) whether the trial court abused its discretion in sentencing defendants to their respective terms of imprisonment. We affirm.

The relevant facts are as follows.

### THE McKINLEY TRIAL

The victim, L.S., testified that defendants, uninvited, came to her apartment at 120 N. Kilpatrick in Chicago, at 6 p.m. on December 2, 1987. The victim had known defendant McKinley casually for about

six months, as he had stopped by her apartment several times and she had spoken to him from her window. The victim did not know defendant Davis. On the evening of the incident, L.S. allowed defendants into her apartment. According to the victim, both defendants used her bathroom numerous times. Defendant McKinley asked her if she had any money, to which she replied that she did not.

After defendants promised that she would be returned home soon, L.S. agreed to go with them to defendant Davis' home, located at 4909 W. Polk St. in Chicago. On the way, the victim and defendants stopped at a liquor store. Defendant McKinley talked with friends outside the store, while L.S. and defendant Davis went into the store. L.S. testified that inside the store, she observed Davis steal some wine. She left the store at this point, asked McKinley if they could leave, and McKinley told her to wait.

The group next drove to defendant Davis' place of residence. Davis lived in a room in the basement of his family's residence. According to L.S., McKinley showed her cocaine paraphernalia and said "We can get high if you act right." She told him that she did not want to get high, she did not want to have sex, and that she wanted to go home. McKinley then left the room, and Davis entered. According to the victim, Davis offered her white powder in exchange for sex. She told Davis: "I'm not here to get high with either of you or to go to bed with either of you, I just want to leave."

At this point, the victim attempted to leave. Defendants became angry, however, and Davis said that defendants would have to teach her a lesson. Defendant McKinley grabbed her by the arms and threw her on the bed. The victim began to scream and yell. Next, according to L.S., Davis went to the closet and pulled out a big gun, possibly a .38 caliber pistol, which was black, with silver or some other color on the tip.

Defendant McKinley ripped off L.S.' pants and shoes, breaking the zipper on her pants. McKinley ordered her to remove her sweater, and Davis held the gun to her left temple and told her "You better do what he says." L.S. identified the clothing she wore for the jury. The zipper of the pants was ripped, her sweater was ripped under the arm, as was her blouse, and the buttons had been ripped off the blouse.

Defendant Davis kept the gun inches away from her head, and told L.S. that if she refused them, he "would blow [her] brains out." Defendant McKinley penetrated L.S. vaginally with his penis. Davis then slapped her and told her to turn over. At first, Davis attempted

to perform anal intercourse upon her, but then he performed vaginal intercourse upon her.

After defendant Davis finished, defendant McKinley told L.S. that she had better do what McKinley said, because defendants took women like her, put them in plastic bags and dumped them in the lake. McKinley proceeded to search her clothing and took a $5 dollar bill from her pockets. At this time, L.S. believed that McKinley still had the gun; she did not see him put the gun back in the closet.

Next, according to the victim, defendants ordered her to put her clothes back on, saying that they were going to take her to "the north side so [she could] make some money" for them. Defendants shoved her to make her hurry. When L.S. and defendants went out to the car, L.S. fled. Defendant McKinley chased her briefly, but she escaped to a neighbor's house, where she warned the occupants to lock the door behind her as her assailants were still chasing her. A woman called the police, and when the police arrived, L.S. located defendant Davis' home for them. She was then taken to Loretto Hospital.

On December 13, 1987, the police drove up to L.S. Defendant McKinley was in the squad car, and L.S. identified him as one of her attackers.

The next witness to testify was Bertha Bell. She was acquainted with defendant Davis' family and lived near the Davis residence. On the night of December 2, 1987, L.S., a stranger, came to her home. L.S. was nervous and crying. The victim's shoe heel was torn off and her blouse was ripped loose. The victim stated "Teddie and his friend" had just raped her and put a gun to her head.

Officer Roy Jackson testified that on the night in question he arrived at the Bell residence to find the complainant "crying and almost hysterical." According to Officer Jackson, L.S. said that she just been raped at gunpoint by two black males and that one of them, whom she knew as Teddie, had taken $5 from her. Officer Jackson further related that on December 13, 1987, he picked McKinley up and took him to L.S., who identified him as one of her attackers.

Next, the stipulated testimony of Dr. Timmons, who treated L.S. at the hospital, was admitted into evidence. Timmons would testify that he treated complainant, who was upset and crying and indicated she had been raped. There was a fresh scratch on her right arm, her left wrist was swollen, and a vaginal smear indicated the presence of spermatozoa.

Defendant McKinley testified on his own behalf. He said that he first met L.S. in August of 1987, and that since that time, he had given her money to buy cocaine several times. Defendant McKinley

further testified that after L.S. would purchase cocaine, the two would return to her apartment, where "she would get high and we would have sex." McKinley testified that the two had sex only one time, although he continued to see her and continued to give her money.

On the evening in question, he and defendant Davis visited L.S.' apartment. Inside, according to McKinley, a man was smoking cocaine. The victim suggested that if he had money and if defendants bought her a bag of cocaine, she "would turn [defendants] both on." Defendant McKinley said that the victim was "sort of a prostitute."

Next, defendants and the victim left for defendant Davis' home, stopping at a liquor store on the way. In Davis' room, defendant stated that he saw L.S. kissing Davis and "cooking up" cocaine with her own paraphernalia. After she finished smoking the cocaine, she told McKinley that she should have gotten more cocaine. Then, however, she voluntarily took her clothes off and had sex with McKinley. He denied using force, and he denied that either Davis or himself had a gun. McKinley further denied either taking $5 from complainant or proposing to take her to the north side for the purposes of prostitution.

After the three left Davis' apartment, complainant insisted on walking to her home, which was located some 10 blocks away. Defendant McKinley testified that she appeared angry over receiving too little cocaine.

In rebuttal, the State established defendant McKinley's 1982 plea of guilty to a charge of felony theft. Thereafter, the jury found McKinley guilty of both aggravated criminal sexual assault and armed robbery.

### THE DAVIS TRIAL

Complainant testified at the Davis trial in a manner consistent with her testimony at the McKinley trial. The same is true of Bertha Bell, to whose house complainant went after the incident, and of Officer Issacson, who additionally related details about the arrest and identification of defendant Davis. At the Davis trial, L.S. described the gun used during the incident as a black handgun, "possibly a .38."

Ernestine Lee, defendant Davis' sister, testified in Davis' behalf. She testified that she saw the defendants and "a lady" enter the basement room. She could not, however, hear what went on in the basement and did not see the group leave.

Defendant Davis testified. When he went to L.S.' apartment, he did not see her smoking cocaine, but did see a man smoking. L.S.

asked McKinley for money. McKinley, in turn, asked to borrow $25 from Davis to give the money to L.S. so that she could buy cocaine.

After the three arrived at his basement apartment, Davis testified that he left for awhile, and when he returned he found McKinley and the victim on his bed, and they apparently had just engaged in sex. He further observed McKinley take $5 from L.S.' pocket. Then, L.S. offered to have sex with him (Davis) in exchange for more cocaine. Defendant Davis proceeded to have sex with L.S.

According to Davis, a toy, plastic gun, grey with a red tip, picked up by McKinley, was present. McKinley played with the gun, clicking the trigger, but McKinley never threatened L.S. with the gun.

Davis further testified that after L.S. and McKinley had a "domestic argument," he asked them to leave. Davis denied that L.S.' clothes were ripped. After she left, he advised McKinley to find her, and McKinley briefly gave chase. Defendants then, alone, went to the north side of the city. Police later found the toy gun and a cocaine pipe, which Davis claimed was L.S.', at his apartment.

In rebuttal, the State introduced evidence of defendant Davis' 1979 misdemeanor and 1980 and 1981 felony convictions. Defense counsel requested that the jury be instructed on both robbery and criminal sexual assault as lesser-included offenses. The trial court gave the robbery instruction but not the criminal sexual assault instruction.

The first issue we address is whether the trial court erred in refusing to instruct the jury in the Davis trial on the lesser-included offense of criminal sexual assault. Defendant Davis' argument that the trial court erred in refusing to give the instruction on simple criminal sexual assault is as follows. According to defendant, a factual dispute existed on the question of whether either Davis or defendant McKinley was armed with a gun during the sexual assault. While the jury could have believed that the victim was forced to have sex against her will, it could have rejected her testimony that she was forced to do so at gunpoint, which provided the basis for the charge of aggravated criminal sexual assault. Defendant Davis testified that no gun was used to threaten the victim—only that defendant McKinley was playing with a plastic, toy gun. According to defendant Davis, the jury could have either believed complainant's testimony about the use of a real gun, believed that she consented to sex with defendants, or believed that complainant was forced to engage in sexual intercourse "but that no gun was displayed, used or threatened." Defendant does not argue that the jury could have found a belief on the part of the complainant that the toy gun was real to be unreasonable, al-

though this appears to be an option for the jury flowing from the manner in which defendant has briefed the issue.

The State responds that the issue in this case does not involve the factual determination of the presence or absence of a gun during the incident. The question, to the State's line of thinking, is whether the jury could have found that L.S. reasonably believed that she was threatened by a gun during the sexual assault and robbery. According to the State, the trial court properly refused an instruction on the lesser-included sexual offense once defendant admitted the presence of a gun, whether real or toy. This is so, the State argues, because while the crime of armed robbery requires the person carry an *objectively* dangerous weapon, the crime of aggravated criminal sexual assault requires the presence only of a weapon which the victim *subjectively* believes to be dangerous. The jury, according to the State, could and did premise its verdict on the aggravated criminal sexual assault charge upon the belief that the weapon was one she reasonably believed under the circumstances to be dangerous. This, the State argues, is evident even if the jury were to believe defendant Davis' account of the type and manner of gun displayed.

The State observes, moreover, that defendant Davis was found guilty of armed robbery, a result which necessarily flows from the determination that it was a real-looking, dangerous gun.

In this case, defendants committed aggravated criminal sexual assault if they committed a sexual assault and while committing it "displayed, threatened to use, or used a dangerous weapon or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(1).) Criminal sexual assault (see Ill. Rev. Stat. 1987, ch. 38, par. 12—13) is a lesser-included offense of aggravated criminal sexual assault. *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1029, 554 N.E.2d 556.

In *People v. Phillips* (1989), 181 Ill. App. 3d 144, 150, 536 N.E.2d 1242, a case in which defendant argued that he was not found guilty of aggravated criminal sexual assault beyond a reasonable doubt, the court discussed the dangerous instrument requirement of the statute. The court observed:

" 'In determining whether a particular instrument constitutes a dangerous weapon, the supreme court has held:

"Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is

doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case." ' [Citations.]" 181 Ill. App. 3d at 150.

The State contends that "[a] toy gun does not give rise to the offense of the armed robbery statute." The State cites *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455, for this simple proposition, and the State's interpretation of *Skelton* in this manner is inaccurate. In fact, while the *Skelton* court held that a toy gun in that case was, as a matter of law, not a dangerous weapon, the court observed:

"In the great majority of cases it becomes a question for the fact finder whether the particular object was sufficiently susceptible to use in a manner likely to cause serious injury to qualify as a dangerous weapon. Where, however, the character of the weapon is such as to admit of only one conclusion, the question becomes one of law for the court. [Citations.] The toy gun in this case, in our judgment, falls into the latter category. It does not fire blank shells or give off a flash *** it is entirely too small and light in weight to be effectively used as a bludgeon *** it fires no pellets *** and, except that it could, conceivably, be used to poke the victim in the eye (and a finger could be used for that purpose), it is harmless. It simply is not, in our opinion, the type of weapon which can be used to cause the additional violence and harm which the greater penalty attached to armed robbery was designed to deter." 83 Ill. 2d at 66-67.

■■ In this case, there can be little doubt that the dangerousness of the weapon was an issue in need of resolution. Defendant Davis is correct in arguing that some evidence existed in the record (namely his own testimony) which, if believed by the jury, could have supported his case for simple criminal sexual assault. If the jury believed his testimony that the gun was a "small," "plastic," "cap" pistol, that was never pointed at or used to threaten the victim, the jury might have concluded that it was not a dangerous weapon within the meaning of the aggravated criminal sexual assault statute. Moreover, the jury might have believed that the victim could not reasonably have believed under the circumstances that it was a dangerous weapon, a different question than whether it actually was a dangerous weapon. The jury was not allowed to consider this question due to the lack of instruction on the lesser-included offense.

However, as the State points out, the jury did determine that a dangerous weapon was involved in the incident when it found defend-

ant guilty of armed robbery. The record does not suggest, as defendant Davis contends in reply, that defendant testified that the toy gun was taken out and played with after the assault. Davis' testimony does not establish when the toy gun was played with. Given that the jury obviously believed that the gun used was a dangerous weapon in returning the guilty verdict on the armed robbery charge, we do not find any prejudice defendant Davis suffered from the lack of an instruction on the lesser-included sex offense charge. We therefore affirm defendant Davis' conviction.

Next, we address whether the trial court's failure to instruct the jury in the McKinley trial on the lesser-included offenses of criminal sexual assault and robbery was error, despite the fact that these instructions were not requested.

Defendant McKinley argues that despite the fact he never requested them, it was reversible error for the trial court not to instruct the jury on the lesser-included offenses of robbery and criminal sexual assault. Defendant asks us to disregard any waiver on the part of McKinley due to his failure to request the instructions under the plain error doctrine. We should do so, according to defendant, "in the interests of fundamental fairness—e.g., parity—the same relief Davis can lay claim should be afforded to McKinley as well."

■ There is, however, an important difference in the testimony elicited at the two trials, namely, while Davis admitted that some type of pistol, albeit only a toy gun, was present, McKinley, on the other hand, completely denied that there was a weapon of any sort present. Thus, the victim's reasonable belief under the circumstances that the weapon was dangerous was not an issue. Moreover, given that defendant denied the presence of a weapon at all, there is no way the jury could have concluded, believing complainant's testimony as its verdict indicated it did, that any sexual assault without a dangerous weapon occurred. It is defendant's duty, as the State points out, to request jury instructions, and the failure to do so will constitute a waiver of the issue. See *People v. Foster* (1989), 190 Ill. App. 3d 1018, 547 N.E.2d 478.

Moreover, defendant's argument that this case is analogous to *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, is not persuasive. There, the supreme court chose to consider the correctness of instructions which were given which incorrectly stated the burden of proof involving the offenses of both murder and manslaughter. The court considered the issue despite the fact that both defendants in *Reddick* had failed to object at trial, present proper instructions or raise the issue in a post-trial motion. One defendant did not even

raise the issue on appeal. (123 Ill. 2d at 198-99.) *Reddick,* however, is distinguishable. Here, defendant McKinley did not receive an instruction which incorrectly stated the burden of proof as to either offense he was convicted of, but rather did not receive an instruction on a lesser-included offense, which, as we have indicated, defendant was not clearly entitled to. Defendant has not advanced a convincing argument in support of his invocation that we address the issue under the plain error doctrine.

■■ Likewise, we reject defendant McKinley's brief argument that his counsel's failure to request the lesser-included offense instructions constituted ineffective representation. Given defendant's denial that any weapon was present at all, the failure to instruct the jury on the lesser-included offenses was strategically supportable. Defendant's testimony, in denying both the underlying crimes and the presence of a weapon which provided the aggravating factor resulting in the charges of the greater offenses, could reasonably have been viewed by counsel as removing the option of instruction on lesser-included offenses for the sake of defendant's credibility and to avoid "compromise" in the verdicts.

■■ Finally, we consider whether the trial court abused its discretion in sentencing defendants to their respective terms of imprisonment. Defendants' argument that the trial court abused its discretion in imposing 20-year (defendant McKinley) and 18-year (defendant Davis) concurrent sentences boils down primarily to the argument that defendants' conduct was not particularly brutal or heinous, as aggravated criminal sexual assaults and armed robberies go, that defendants had limited criminal histories, and that defendants showed some real potential for rehabilitation.

A trial judge's decision in regard to sentencing is entitled to great deference and weight, and absent an abuse of this discretion, a sentence may not be altered upon review. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In this case, defendants' sentences were 10 and 12 years below the statutory maximum, the conduct was indeed somewhat brutal, and we hold that the trial court did not abuse its significant discretion in imposing the sentences it did.

Accordingly, defendants' convictions are affirmed.

Affirmed.

McNAMARA and LaPORTA, JJ., concur.