SHIRLEY BELTZ, Plaintiff-Appellant, v. WILLIAM E. GRIFFIN, Defendant-Appellee.

Fifth District   No. 5—91—0828

Opinion filed May 5, 1993.

Randall J. Rodewald, of Womick & Associates, Chartered, of Carbondale, for appellant.

William Kent Brandon and Christy W. Solverson, both of Brandon, Schmidt & Palmer, of Carbondale, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

On February 27, 1987, Shirley Beltz was a backseat passenger in a car owned by William Griffin and driven by Cindy Abel. The three were leaving the Shriner's Club in Marion, Illinois, when Cindy Abel backed the vehicle into a concrete light post. Shirley Beltz filed a complaint against William Griffin for personal injuries she allegedly sustained in the accident. The jury returned a verdict in favor of William Griffin. Plaintiff appeals. We affirm.

Following the accident, plaintiff was treated by Dr. William Patterson, who referred her to Dr. Robert Gardner. After he treated the plaintiff, Dr. Gardner referred her back to Dr. Patterson for further treatment. During the course of discovery, plaintiff indicated that she had sought treatment from Dr. William Patterson. However, the fact that plaintiff had been treated by Dr. Gardner was never mentioned by plaintiff in her answers to defendant's interrogatories and requests for production or during plaintiff's deposition. It was not until Dr. Patterson was deposed two weeks prior to trial that defendant learned of the existence of Dr. Gardner.

During Dr. Patterson's evidence deposition, plaintiff's counsel asked about his referral of plaintiff to Dr. Gardner. Plaintiff's counsel questioned him about Dr. Gardner's bill and offered that bill into evidence. This was the first time defendant was made aware that plaintiff had treated with Dr. Gardner. It was also the first time defense counsel saw a physician's report generated by Dr. Gardner. Defense counsel used Dr. Gardner's report, including the plaintiff's medical history outlined therein, to cross-examine Dr. Patterson. The report stated that plaintiff was involved in an automobile accident on January 31, 1987, less than 30 days before the accident at bar. The report also noted that plaintiff sustained injuries in the prior accident that were identical to those sustained in the accident at issue. At

plaintiff's deposition she had specifically denied involvement in a prior automobile accident.

Prior to trial, plaintiff filed a motion *in limine* which sought to limit or strike those portions of the evidence deposition which referred to Dr. Gardner's report. Plaintiff argued that because Dr. Patterson testified that he did not rely on the report in his treatment of the plaintiff, the report was not admissible as an exception to the hearsay rule. The court denied plaintiff's motion *in limine* and found (1) that Gardner's report was not hearsay, and (2) that the report was properly admissible as a basis of Dr. Patterson's opinions.

■ The report was hearsay. It was an out-of-court statement offered to prove the truth of the assertions in the statement. (C. McCormick, *Handbook of the Law of Evidence* §225, at 460 (1954).) Defendant now contends that, while the statement may be hearsay, it was admissible as an exception and cites three cases in support of his contention: *Levenson v. Lake-to-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 394 N.E.2d 1359, *Clemons v. Alton & Southern R.R. Co.* (1977), 56 Ill. App. 3d 328, 370 N.E.2d 679, and *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 339 N.E.2d 10.

*Levenson v. Lake-to-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 394 N.E.2d 1359, held that a treating physician may testify regarding a medical history taken by another physician. The medical history in that case referred to a conversation between plaintiff and the other doctor regarding plaintiff's prior chest pains. Plaintiff argued that the reference to the conversation was inadmissible hearsay, while defendant contended that he merely sought to question the treating doctor as to the significance of the information contained in the report. The court ruled that the testimony was admissible as an exception to the hearsay rule.

In *Clemons v. Alton & Southern R.R. Co.* (1977), 56 Ill. App. 3d 328, 370 N.E.2d 679, plaintiff's surgeon was permitted to read into evidence a written consultation note of a psychiatrist. The note itself was not admitted into evidence. The surgeon's diagnosis and treatment of the plaintiff was based, in part, on this note. The court ruled that the evidence was properly admitted as an exception to the hearsay rule. In a similar case, *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 339 N.E.2d 10, a treating physician read a report of a psychiatrist. The treating physician had relied in part on this consultation report in prescribing medicine for the plaintiff. The report was not offered into evidence, and the psychiatrist was not a witness at trial. The court found that the physician's testimony was admissible as an exception to the hearsay rule.

*Levenson* relied upon *Clemons* and *Smith,* and the latter two rely upon *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171, for holding that portions of a doctor's report may be admitted through the testimony of another doctor as an exception to the hearsay rule. Unfortunately for the continued viability of *Clemons* and *Smith, Ward* does not create such an exception.

*People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171, involved a claim of insanity in an appeal from a murder conviction. In a bench trial, the State's expert, Dr. Kelleher, related a conclusion on defendant's sanity made by another expert, Dr. Reifman. The supreme court first noted that any claimed error was vitiated because defendant's medical records, including Dr. Reifman's report, were admitted on defendant's motion. However, the court went beyond this possible basis of affirming the conviction:

> "But even if these reports had not been admitted into evidence, there would not have been error in the propriety of Dr. Kelleher expressing his opinion as to defendant's sanity predicated, in part, upon these reports." *Ward,* 61 Ill. 2d at 566, 338 N.E.2d at 176.

The court then turned to and quoted from Federal Rule of Evidence 703:

> " 'The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.'* (Emphasis added by supreme court.)" (*Ward,* 61 Ill. 2d at 567, 338 N.E.2d at 176.)

Finally, the court stated:

> "If such reports are of a type customarily utilized by the medical profession, then *these reports may be used as factors by an expert in the determination of his opinion as to an accused's sanity even though the reports are not admitted into evidence.*" (Emphasis added.) *Ward,* 61 Ill. 2d at 568, 338 N.E.2d at 177.

The emphasized portion of the final quotation makes it clear that *Ward* did *not* create an exception to the hearsay rule. Instead, *Ward* allowed hearsay statements to be used "as factors by an expert in the determination of his opinion." The court's limitation of the use of the hearsay report is further suggested by the concluding clause of the quotation, "even though the reports are not admitted into evidence." If an exception to the hearsay rule had been created by *Ward,* the Reifman report could and would have been admitted as such an excep-

tion instead of being limited to its use as a factor in the determination of Dr. Kelleher's opinion.

This interpretation of the limited extent of *Ward*'s holding is supported by the supreme court's discussion of *Ward* in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322:

> "This court, in *People v. Ward* (1975), 61 Ill. 2d 559, 566-67, held that medical records may be used by an expert witness in forming an opinion as to an accused's sanity *even though the reports are not admitted into evidence.*" (Emphasis added.) (*Wilson,* 84 Ill. 2d at 192, 417 N.E.2d at 1326.)

*Wilson v. Clark,* of course, went one step further than *Ward* and formally adopted Federal Rules of Evidence 703 and 705. Even *Wilson,* however, did not create a hearsay exception. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §703.1, at 521-22 (5th ed. 1990) (hereinafter M. Graham), and cases cited therein.) Although the increasingly frequent use of *Wilson*'s holding to facilitate expert testimony may at times make it appear as if a new exception exists, there can be real differences between admission of evidence as a hearsay exception and utilization of information as a basis for an expert's opinion. As Professor Graham points out:

> "While for most practical purposes admissibility to form the basis of an expert's opinion is equivalent to having the evidence admitted for its truth under a hearsay exception, differences remain. First, what constitutes proper argument to the trier of fact as to the existence of the fact relied upon by the expert differs. More important, evidence admitted solely under Federal Rule 703 will *not* support a *prima facie* case. *See Smith v. United States,* 353 F.2d 838 (D.C. Cir. 1965) *cert. denied,* 382 U.S. 974 (1966); *People v. Anderson,* 113 Ill. 2d 1, 99 Ill. Dec. 104, 495 N.E.2d 485 (1986); *Mayer v. Baisier,* 147 Ill. App. 3d 150, 100 Ill. Dec. 649, 497 N.E.2d 827 (1986)." M. Graham §703.1, at 521.

The differences noted by Professor Graham are the reason for this discussion. Based on the foregoing analysis, we decline to follow *Clemons v. Alton & Southern R.R. Co.* (1977), 56 Ill. App. 3d 328, 370 N.E.2d 679, and *Smith v. Williams* (1975), 34 Ill. App. 3d 677, 339 N.E.2d 10, insofar as they hold that contents of medical reports in the possession of another doctor may be related *as an exception to the hearsay rule.* Of course, our ruling on this point has no effect on the continued use of such information as the basis of an expert's opinion under *Wilson* and its progeny.

As noted earlier, the trial court in this case also felt that Dr. Gardner's report could have been utilized as a means of inquiry into the basis of Dr. Patterson's conclusions. This theory presents an additional problem; if that were the only way in which the statement could have been elicited, then it would not have been substantive evidence and should not have been argued as such in defendant's closing argument. We need not examine this problem in any detail, because we conclude that plaintiff waived any error in the admission of the statement contained in Dr. Patterson's testimony by failing to object to the elicitation of the same statement during plaintiff's cross-examination.

Plaintiff's motion *in limine* sought to limit or exclude references to Dr. Gardner's report in Dr. Patterson's deposition. Plaintiff's motion did not request the exclusion of all references to Dr. Gardner's report during the trial. Plaintiff complains that defendant continually mentioned the report during trial. However, plaintiff did not object to defendant's cross-examination of Shirley Beltz regarding Dr. Gardner's report and the alleged prior accident. In addition, plaintiff did not object to defendant's closing argument in which defendant repeatedly referred to Dr. Gardner's report and the prior accident. Even if a party objects to certain evidence, if he fails to object to similar evidence that the trial court admitted without objection, he waives any claim that the evidence to which he did object was admitted erroneously. (*Gillespie v. Chrysler Motors Corp.* (1990), 135 Ill. 2d 363, 374, 553 N.E.2d 291, 296.) We hold that plaintiff has waived any claim of prejudicial error regarding the references to Dr. Gardner's report.

Plaintiff's second argument is that the jury's verdict was against the manifest weight of the evidence. Plaintiff contends that it was against the manifest weight of the evidence for the jury to conclude that plaintiff was not injured in this accident. We disagree.

According to Dr. Gardner's report, plaintiff had been in an automobile accident one month prior to the one at bar. While Dr. Patterson testified that he did not rely on Dr. Gardner's report, he also testified that he could not state which injuries the plaintiff sustained in each of the two accidents. It is true that Dr. Gardner was not called as a witness and that plaintiff denied having been involved in a previous automobile accident. However, the fact that the jury may have chosen to believe either the defense theory that plaintiff's injuries were the result of the prior accident or the defense theory that the minimal impact caused no injury does not mean the verdict was against the manifest weight of the evidence. A jury verdict may not be set aside merely because the jury could have drawn different con-

clusions from the evidence. (*Robertson v. General Tire & Rubber Co.* (1984), 123 Ill. App. 3d 11, 462 N.E.2d 706.) The conflicting evidence presented a question for the jury to determine, and we will not second-guess its decision.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

WELCH and RARICK, JJ., concur.